CANYON COUNTRY STORE, a Utah corporation, Plaintiff, Appellee, and Cross–Appellant,

v.

Norton Edward BRACEY, Excess Insurance Company Ltd., Slater Walker Insurance Company Ltd., and Bellefonte Reinsurance Company, Defendants, Appellants, and Cross–Appellees.

No. 20194.

Supreme Court of Utah.

July 10, 1989.

Rehearing Denied Oct. 24, 1989.

David Nuffer, Terry L. Wade, Bernard Caesar, St. George, for defendants, appellants, and cross-appellees.

James A. McIntosh, Salt Lake City, for plaintiff, appellee, and cross-appellant.

DURHAM, Justice:

Defendants Norton Edward Bracey, Excess Insurance Company, Slater Walker Insurance Company, and Bellefonte Reinsurance Company (the insurers) appeal from a jury verdict and damage award in favor of plaintiff Canyon Country Store (Canyon Country). Canyon Country has cross-appealed.

On appeal, the insurers assert the following: (1) Canyon Country did not bring suit against the insurers within the one-year limit prescribed by the insurance policy; (2) Canyon Country destroyed the insurers' subrogation rights; (3) Canyon Country committed fraud in its application for insurance from the insurers; (4) Canyon Country failed to submit the proper proof-of-loss forms following the accident; (5) the jury erred in its award of lost trucking and grocery business profits; (6) there was no legal basis for an award of attorney fees; (7) the amount of attorney fees awarded Canyon Country was unreasonable; and (8)

the trial judge erred in refusing to submit special interrogatories to the jury and to direct it to return a special verdict. On cross-appeal, Canyon Country claims the following: (1) the trial judge erred in denying Canyon Country's motion for an award of post-trial attorney fees, prejudgment interest, and certain deposition costs; (2) the trial judge erred in denying Canyon Country both access to and the right to give testimony concerning the insurers' wealth; (3) the trial judge erred in allowing evidence of a separate suit and its subsequent settlement to be heard by the jury; and (4) the trial judge erred in the jury instructions he allowed to be given to the jury.

## FACTS

This case arises from a motor vehicle accident in which Lorin Vaughn Goodfellow, president of Canyon Country and one of its two shareholders, destroyed the refrigerated trailer and tractor he was driving. The accident occurred on February 18, 1977, as Goodfellow was returning to Canyon Country with a load of wheat and beans. At approximately 5:30 a.m., Goodfellow drove off the roadway while attempting to negotiate a turn on the highway between Monticello and Blanding, Utah. Both Goodfellow and his passenger, Harry Gabrielson, were seriously injured in the accident.

The tractor and trailer were insured by the defendants in this action.[1] In order to file claims for both the trailer and the tractor, Goodfellow contacted James C. Skaggs, from whom Goodfellow had obtained insurance for the vehicles. Proof-of-loss forms for the vehicles were furnished to Goodfellow; however, Goodfellow disagreed with the valuations given the vehicles by Ronald M. Tullgren, the insurance adjuster assigned by the insurers.

In July 1977, Goodfellow hired an attorney to pursue his insurance claims. A proof of loss for the trailer was submitted to the insurers in September 1977, but no proof of loss for the tractor was ever submitted. The insurers declined to pay the claims. In letters to Frank A. Allen, Can-

yon Country's original attorney, the insurers claimed that the tires on the vehicles were unroadworthy, as the tread was nearly nonexistent. There was testimony at trial that the tires were so badly worn that they did not have enough tread to legally operate in Utah and that, therefore, the insurers were not obligated to pay under the policies.

Following unsuccessful attempts to reach an agreement on payment amounts, Goodfellow and Canyon Country brought suit against the insurers three years after the accident. In an amended complaint filed on January 29, 1982, Goodfellow and Canyon Country sought $13,000 for damages to the tractor, $9,000 for damages to the trailer, $500,000 for lost business profits for a trucking operation, $2,000,000 for Canyon Country's lost grocery business profits, $1,000,000 for punitive damages, and all attorney fees and expenses incurred by Canyon Country and Goodfellow in pursuing the suit. On May 14, 1984, the trial court permitted Goodfellow and Canyon Country to amend the damages to $13,000 for the tractor, $9,000 for the trailer, $2,000,000 in lost grocery business profits for Canyon Country, $1,500,000 in lost business profits for the trucking operation, $15,000,000 in punitive damages, and attorney fees.

Goodfellow also filed suit against the state of Utah, alleging that the highway design and markings on U.S. Highway 163 were inadequate and that their inadequacy was responsible for the accident. Goodfellow's suit against the state claimed personal injuries only. That suit was subsequently settled, and Goodfellow signed a release for all property damage, personal injury, and lost profit claims against the state.

Before trial in the instant case, the complaint was amended to remove Goodfellow as a plaintiff and show Canyon Country as the sole plaintiff. Canyon Country also moved for reformation of the insurance contract before trial began. The insurance policies had originally been issued in the name of Vaughn Goodfellow, d/b/a Can-

---

1. Defendants are all underwriters known collec- tively as Lloyds of London.

yon Country Store, but were changed to show Canyon Country Store, a Utah corporation, as the insured. The insurers did not object to the reformation.

The jury verdict totaled $227,636.67, as follows: $12,750 for the tractor, $13,600 for the trailer, $28,199 in lost profits for Canyon Country, $72,065 for lost trucking profits, $1,600 in attorney fees for Allen, and $99,422.67 in attorney fees for James A. McIntosh.

## INSURERS' APPEAL

This Court will reverse a judgment based on a jury verdict "only if, viewing the evidence in the light most favorable to the verdict, there is no substantial evidence to support it." *In re Estate of Kesler*, 702 P.2d 86, 88 (Utah 1985) (citation omitted). Where conflicting evidence was introduced at trial, "we assume that the jury believed those facts that support its verdict ..., and we view the facts and the reasonable inferences that arise from those facts in a light most supportive of the jury's verdict." *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1082 (Utah 1985) (citations omitted).

### Statute of Limitations

■ First, although the insurers claim that Canyon Country should not be allowed to recover under the insurance policies because it did not bring suit within one year of the accident, conflicting evidence was introduced at trial about this issue. Goodfellow claimed that he never received insurance policies which contained the one-year statute of limitations provision and thus never had the necessary notice to file a timely suit. At trial, both parties attempted to show that Skaggs, the insurance broker from whom Goodfellow purchased the insurance, was an agent of the other party. The insurers claimed that because Skaggs had received a complete copy of the policy which included the one-year provision, his knowledge of the limitation was attributable to Goodfellow and Canyon Country through the doctrine of agency. Canyon Country disputed the insurers' claim that Skaggs had received the full policy and, in

any event, claimed that Skaggs was the insurers' servicing agent. The jury's verdict demonstrates that it believed Canyon Country's evidence on this point and that the suit was permissible in spite of the fact that it was filed after the one-year statute of limitations had run. There is ample evidence in the record to support the jury's decision, and therefore we will not disturb it on appeal.

### Subrogation Rights

■ Next, the insurers claim that their subrogation rights were destroyed when Goodfellow executed a release with the state upon settlement of his suit. Conflicting evidence was introduced, and the jury's decision was supported by evidence. At trial, the insurers contended that the release was for property damage as well as for personal injury. Canyon Country attempted to demonstrate that the release was a personal one, releasing the state from any claims Goodfellow personally may have had against the state, instead of a corporate one affecting Canyon Country's rights. It appears that the jury believed the evidence introduced at trial by Canyon Country. Because there was substantial evidence on which to base the verdict, we will not reverse on appeal.

### Fraud

Third, the insurers assert that Goodfellow committed fraud when he applied for the insurance policies. The insurers claim that Goodfellow made factual misrepresentations by stating on the insurance applications that he owned the trailer free and clear, when in fact General Electric Credit Corporation had a lien on it. The insurers also claim that Goodfellow's statement that the combined fair market value of the trailer and the tractor totaled $22,000 was a misrepresentation, since the trailer and tractor were actually worth only $14,000.

Evidence was presented at trial in support of both the insurers' and Canyon Country's positions. The issue of misrepresentation was a question for the jury; it had to determine whether Goodfellow had

an intent to deceive the insurers in his application for insurance.

> The question on appeal from a judgment based on a jury verdict is not whether there is substantial evidence which would have supported a contrary verdict, or even whether this Court, had it been trier of fact, would have reached the same verdict as that reached by the jury. Rather, the issue is whether the jury's findings are supported by substantial competent evidence.

*In re Estate of Kesler*, 702 P.2d 86, 95 (Utah 1985). There was evidence to support the jury's determination that Goodfellow did not commit fraud, and therefore, we affirm the jury's decision on this issue.

### Proof of Loss

The insurers next claim that they had no obligation to make payment under the .insurance policies because Canyon Country failed to submit a properly completed proof of loss for the trailer and never submitted any proof of loss for the tractor. The policy provided that proof of loss was to be sent to the insurers within sixty days of the accident.

■ Proof-of-loss provisions are included in insurance policies "to give the insurer an adequate opportunity to investigate, to prevent fraud, and to form an estimate of its rights and liabilities before it is required to pay." *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 656 (Utah 1988) (Citations omitted). Strict compliance . with proof-of-loss provisions is not required; substantial compliance will fulfill the insured's policy obligations. *Id.* at 655. We believe that Canyon Country substantially complied with the provision.

■ Goodfellow's brother, Lynn Goodfellow, contacted Skaggs soon after the accident with details concerning the damage to the vehicles. The insurers sent Tullgren to appraise the vehicles and the damage done to them. It is evident from the correspondence between the insurers and other parties that the insurers had the information they needed to assess Canyon Country's claims for payment. Based on the information they had, the insurers determined that they would deny the claims. In light of the fact that they had sufficient information on which to base a denial of payment, it is reasonable to conclude that the proof-of-loss provision was substantially complied with. Although proof-of-loss forms may not have been submitted within sixty days of the accident, the insurers were not prejudiced in their evaluation of the claims.

### Canyon Country's Lost Business Profits

■ Fifth, the insurers assert that there is no basis for the jury's award of lost profits for Canyon Country's grocery and trucking businesses. In *Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161 (Utah 1983), this Court explained the necessary requirement for a damage award based on lost profits. We stated, "Lost profits must be established with reasonable certainty.... [W]e have described this requirement in terms of proof of 'sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered.'" *Id.* at 1165 (citations omitted). We held that proof must be sufficient as to "(1) the fact of lost profits, (2) causation of lost profits, and (3) the amount of lost profits." *Id.* (citations omitted). We elaborated that "the 'pivotal question' is not whether the plaintiff has proven an established earning record but whether he has proven the damages for lost profits with reasonable certainty, although the former is often relevant to the latter.'" *Id.* at 1166 (quoting *Clark v. International Harvester Co.*, 99 Idaho 326, 346–47, 581 P.2d 784, 804–05 (1978)). In addition to certainty, damages for lost profits must also be shown to have been a reasonably foreseeable consequence of the defendant's act. *Id.* at 1167.

Although a business need not have been a going concern in order to permit lost profits recovery, we are not persuaded that lost profits for the trucking operation (for which the jury awarded over $73,000) were proven with sufficient certainty. Neither the fact of lost profits, their causation, nor the amount was proven adequately to sustain the award.

■ At trial, Canyon Country presented evidence that only preliminary contacts had been made concerning a prospective trucking operation. Goodfellow testified that he had discussed hauling goods both to and from Phoenix, in addition to the goods he carried to Canyon Country as inventory. The most concrete of these discussions was with Goodfellow's uncle, Howard Hansen of Associated Grocers in Phoenix. Hansen had told Goodfellow that when the need arose to transport fresh produce from Utah to Phoenix, Goodfellow would be notified. The other hauling discussions Goodfellow had were even more tentative than those with Hansen. Tentative discussions about the possibility of future contracts are not adequate to establish the certainty with which lost profits must be shown.

Additionally, Canyon Country failed to demonstrate that future profits, if any, were lost due to the insurers' failure to pay under the policy. There was no substantial evidence that the insurers' failure to make payment was causally connected to lost profits.

Finally, the amount awarded for lost profits was speculative. No contracts had ever been entered into by Canyon Country, and the only evidence of an amount lost was given by Frank Stuart, a financial consultant. He estimated the average amount made per haul by independent truckers working for Associated Grocers and multiplied that figure by a theoretical number of potential customers. No other proof regarding the existence and number of these hypothetical customers was offered. Again, the amount of lost profits was not shown with sufficient certainty to allow recovery.

We do not need to address the issue of foreseeability, as the jury award fails because of its speculative nature. We reverse the award for lost profits related to Canyon Country's prospective trucking business.

■ Although there is not enough evidence in the record to support the trucking business lost profits award, we affirm the

lost profits awarded for Canyon Country's grocery business. Evidence, although conflicting with that of the insurers, was presented at trial sufficient to prove the fact of lost profits, their causation, and the amount. Canyon Country's expert witness Stuart testified about a net profit forecast based on voluminous sources, including the store's books and records and evidence of actual profits of similar businesses. Although Canyon Country never made a profit during its short lifespan,[2] the jury apparently believed that, had the insurers paid the claim promptly, Canyon Country would have been able to continue and conduct business profitably. "[N]ew businesses should be allowed to try to prove lost profits up to a reasonable level of certainty by other means, just as established businesses are permitted to do." *Cook*, 664 P.2d at 1166 (citations omitted). In a footnote, the Court in *Cook* explained that "[a]lternative means of establishing the certainty of lost profits include expert testimony of profit potential, [and] evidence of the actual profits of similar businesses...." *Id.* at n. 4.

While this Court may not have reached the same decision, the jurors chose to believe the evidence favorable to Canyon Country, and we will not substitute our judgment for theirs.

*Attorney Fee Issue*

The insurers claim, sixth, that there was no legal basis for the award of attorney fees and, seventh, that the amount awarded was unreasonable. Although generally an issue for the trial judge, the attorney fee question in this case was submitted to the jury as an element of damages. Canyon Country had requested that attorney fees be determined in a separate hearing after trial, but the insurers objected. The trial judge agreed with the insurers that the attorney fees issue was part of Canyon Country's case-in-chief.

■ "Utah adheres to the well-established rule that attorney's fees generally cannot be recovered unless provided for by statute or by contract." *Turtle Management, Inc. v. Haggis Management*, 645

2. The grocery store opened its doors in December 1976 and closed mid-February 1978.

P.2d 667, 671 (Utah 1982) (citations omitted). Examples of a statutory basis for recovery include the Civil Rights Attorney's Fees Awards Act of 1976 and the attorney fee provision found at Utah Code Ann. § 78–27–56.[3] An example of a contractual basis for an award of fees would be a clause in a uniform real estate contract which provides for the payment of attorney fees by a defaulting party. Attorney fees awarded pursuant to contract or statute are usually those found by the court to be "reasonable," unless the statute or contract provides otherwise.

In this case, there was no contractual provision requiring attorney fees, nor is Canyon Country entitled to recover fees by statute.[4] Canyon Country's claim for recovery of fees was predicated on the theory that attorney fees were an item of consequential damages flowing from the insurers' breach of contract. This is a legitimate theory of damages, as the trial court recognized. However, attorney fees recovered as damages in a breach of contract suit must be based on the prevailing party's actual losses, i.e., its out-of-pocket expenses for legal counsel. The insurers may only be held liable to the extent Canyon Country was actually damaged, that is, in the same amount it was legally obligated to pay counsel. *See Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 801–02 (Utah 1985); *Zions First Nat'l Bank v. National American Title Ins.,* 749 P.2d 651, 657 (Utah 1988). Thus, Canyon Country is entitled to recover in damages only that which it was obliged to pay: one-third of any recovery. Canyon Country successfully confused this issue at trial by arguing that a contingency agreement was not binding as a measure of damages and that "reasonableness" was the standard. "Reasonableness" is generally the standard when the basis for recovery is a statute or a contract. As pointed out earlier, however, Canyon Country's claim was based on neither.

We hold, therefore, that Canyon Country was not entitled to "reasonable" fees, but only to fees in the amount of one-third of the amount ultimately recovered, as provided for in its attorney fees agreement.

*Special Interrogatory and Verdict Issues*

Eighth, the insurers claim that the trial court erred in refusing to submit special interrogatories to the jury and to direct it to return a special verdict. Special verdicts and interrogatories are both matters within a trial court's discretion. *Cambelt Intern. Corp. v. Dalton,* 745 P.2d 1239, 1241 (Utah 1987) (citations omitted). Utah Rule of Civil Procedure 49 states: "(a) ... The court *may* require a jury to return only a special verdict ...," and "(b) ... [t]he court *may* submit to the jury ... written interrogatories upon one or more issues...." (Emphasis added.) In the absence of a showing of abuse of discretion, the trial court's actions will not be disturbed. *E.A. Strout Western Realty v. W.C. Foy & Sons,* 665 P.2d 1320, 1324 (Utah 1983) (citations omitted). Specifically, the insurers claim that the trial court abused its discretion because (1) numerous jury instructions were in part unclear, erroneous, incomplete, and prejudicial, and (2) the complexity of this case mandated the use of special interrogatories or verdicts in order to help the jury enter a rational verdict.

A jury does not necessarily have to state directly how it resolved every important issue in a case to arrive at a rational and fair verdict. *Miley v. Oppenheimer & Co.,* 637 F.2d 318, 334 (5th Cir.1981). "No party is entitled to a special verdict on each of the multi-faceted, multitudinous issues essential to the resolution of a given case." *Id.* (citations omitted). While complex in

---

3. The Civil Rights statute found at 42 U.S.C. § 1988 (Supp. V 1981) provides that in federal civil rights actions, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The Utah law allows a prevailing party reasonable attorney fees "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith...." Utah Code Ann. § 78–27–56(1) (Supp.1989).

4. The standard required for fee awards under Utah Code Ann. § 78–27–56 (Supp.1989) was not met here; the trial court did not find a lack of good faith or meritlessness in the defense.

some respects, the instant case primarily concerns an alleged breach of an insurance contract and damages. At trial, the jury did not appear to be overwhelmed by issues and evidence, as might have been the case in a convoluted antitrust or securities regulation matter. Further, contrary to the insurers' arguments, the jury instructions do not appear to have been prejudicial but, rather, helpful to the jury in sorting out issues. Finally, despite the insurers' objections, a violation of the contractual covenant of good faith and fair dealing was adequately and correctly defined in the jury instructions.[5] Jury instructions defined bad faith in part as "[a] refusal without proper cause to compensate the insured for a loss covered by the policy" and stated, "An insurer has the duty of acting expeditiously, in good faith and within a reasonable time after demand to pass on proofs of loss furnished by the insured. Bad faith could include refusal to pay."

After reviewing the record, we cannot say that there was an abuse of discretion in the instructions and verdict forms submitted to the jury.

## CROSS-APPEAL ISSUES

On cross-appeal, Canyon Country claims that (1) the trial judge erred in denying Canyon Country's motion for award of post-trial attorney fees, prejudgment interest, and certain deposition costs; (2) the trial judge erred in denying Canyon Country both access to and the right to give testimony concerning the insurers' wealth; (3) the trial judge erred in allowing evidence of a separate suit and its subsequent settlement to be heard by the jury; and (4) the trial judge erred in the jury instructions which he allowed to be given to the jury.

*Post–Trial Attorney Fees*

First, Canyon Country claims post-trial attorney fees for the cost of opposing the insurers' motion for judgment notwithstanding the verdict or, in the alternative, a new trial. After trial, the judge denied Canyon Country's motion without a hearing or written comment. Because the jury awarded attorney fees and the trial judge found sufficient evidence to uphold that verdict, Canyon Country argues that all "necessary" post-trial services are eligible for compensation as well. Canyon Country also argues that because the insurers acted in bad faith and were "stubbornly litigious," case law and section 78–27–56 of the Utah Code require that fees related to post-trial motions be awarded.

As previously noted, Canyon Country was entitled to recover as consequential damages the amount it was obliged to pay as attorney fees. That amount was one-third of the recovery. Because this amount covered all of Canyon Country's counsels' work, there can be no basis for adding to the damages any amount for post-trial motions. Beyond the damages awarded, Canyon Country can recover attorney fees only if provided for by statute or contract. *Turtle Management, Inc. v. Haggis Management*, 645 P.2d at 671. Because there was no attorney fee provision in the insurance contract in this case, the only basis for an award would be a finding of bad faith under Utah Code Ann. § 78–27–56.[6] It was within the trial court's discretion to determine bad faith under this section. The statute does not require a trial court to hold a hearing to determine if a party has been "stubbornly litigious" or if an action was without merit. Nor does it require written findings on the bad faith

---

**5.** A violation of the covenant of good faith and fair dealing implied in all contracts may give rise to a claim for a breach of contract. *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 798 (Utah 1985).

**6.** Proof of a breach of the covenant of good faith and fair dealing by an insurer does not show the bad faith necessary for an award under section 78–27–56. Notwithstanding the name given the covenant, breach of the covenant of good faith and fair dealing is an objective question. As is true of virtually all other contractual breaches, the intention of the breaching party is immaterial. *See Beck,* 701 P.2d at 800. On the other hand, the existence of bad faith, which must be shown under section 78–27–56, is a subjective question of state of mind.

issue.[7]

Upon review of the record, we cannot say that a determination that the insurers had no bad faith insofar as is related to this post-trial motion was an abuse of discretion. The trial was marked at times by sharply conflicting evidence, and credibility played a key role. We therefore affirm the trial court's decision to deny Canyon Country's motion.

*Prejudgment Interest*

[12] Next, Canyon Country argues that the trial court erred in denying it prejudgment interest on attorney fees and on the loss of profits in the grocery and trucking businesses.[8] We may summarily dispose of this issue as it relates to the trucking operation. Because we have disallowed this part of the jury award, the prejudgment interest issue is moot. We also deny the claim as it pertains to the loss of profits in the grocery business. This Court has repeatedly stated the law in Utah as it applies to prejudgment interest:

> [W]here the damage is complete and the amount of the loss is fixed as of a particular time, and that loss can be measured by facts and figures, interest should be allowed from that time ... and not from the date of judgment. On the other hand, where damages are incomplete or cannot be calculated with mathematical accuracy, such as in the case of personal injury, wrongful death, defamation of character, false imprisonment, etc., the amount of the damages must be ascertained and assessed by the trier of the fact at the trial, and in such cases prejudgment interest is not allowed.

*First Sec. Bank of Utah v. J.B.J. Feedyards*, 653 P.2d 591, 600 (Utah 1982) (citing *Bjork v. April Indus., Inc.*, 560 P.2d 315, 317 (Utah 1977), *cert. denied*, 431 U.S. 930, 97 S.Ct. 2634, 53 L.Ed.2d 245 (1977)) (emphasis omitted); *see also Lignell v. Berg*, 593 P.2d 800 (Utah 1979); *Anderson v. State Farm Fire & Cas. Co.*, 583 P.2d 101 (Utah 1978); *Bingham Coal & Lumber Co. v. Bd. of Education of Jordan School Dist.*, 61 Utah 149, 211 P. 981 (1922); *Fell v. Union Pac. R.R.*, 32 Utah 101, 88 P. 1003 (1907); *Fitzgerald v. Critchfield*, 744 P.2d 301 (Utah Ct.App.1987).

The analysis in determining the appropriateness of a prejudgment interest award is whether a claim such as lost profits is ascertainable with mathematical accuracy. It is, of course, axiomatic that all claims can be reduced eventually to monetary value. All claims would therefore at some point become liquidated and theoretically subject to prejudgment interest claims. Common sense precludes such an interpretation, however.

In this case, we view the grocery store's loss-of-profits damage as analogous to damages awarded in wrongful death or defamation cases and therefore unliquidated. While the basis of the "formula" used to determine Canyon Country's lost profits may have been sufficient for the jury to render a verdict in favor of Canyon Country, it is too speculative to allow for the addition of prejudgment interest. The store was not an established business with a long-term history of profits. It was open for approximately fourteen months and never made a net profit. Due to pending foreclosure and bankruptcy proceedings, it is uncertain whether the store could have stayed in business even had the insurance claim been promptly paid. The purpose of a prejudgment interest award is to compensate a plaintiff for actual loss or to prevent a defendant's unjust enrichment. There was no unjust gain by the insurers in this case, and with the amount of uncertainty involved in determining an actual loss, it would have been inappropriate for the trial court to allow for the addition of prejudgment interest.

*Deposition Costs*

■ Next, Canyon Country argues that the trial court erred by refusing to reimburse it in the amount of $215.50 for taking Skaggs' deposition. Canyon Country presented the Skaggs deposition as a cost

---

7. If a court finds bad faith but in its discretion limits or awards no attorney fees, subsection (2)(b) does, however, require written findings.

8. The jury apparently awarded prejudgment interest on the loss of the tractor and trailer.

item in "Plaintiff's Memorandum of Costs and Disbursements," which was filed with the trial judge after the trial was completed. The deposition cost was expressly disallowed by the court.

The costs of depositions are taxable in proper circumstances, but the decision to award them is discretionary with the trial court. *Highland Constr. Co. v. Union Pac. R.R.*, 683 P.2d 1042 (Utah 1984). The Court in *Highland* relied on *First Security Bank of Utah, N.A. v. Wright*, 521 P.2d 563 (Utah 1974), in observing, "The burden is upon the claiming party to establish that they are necessary and reasonable; the determination of whether that burden is met is within the sound discretion of the trial court." *Id.* at 1051. In this lawsuit, Canyon Country sued Skaggs as an individual defendant. It is not unreasonable that the court believed that Canyon Country (or Skaggs), rather than the insurer, should bear the cost of taking Skaggs' deposition. We therefore affirm the trial court's decision.

### The Insurers' Wealth

█ Canyon Country claims that the trial court erred in denying it access to and the right to present evidence of the insurers' wealth. It is alleged that this information was crucial in order to prove punitive damages. The amount of a punitive damages award is not at issue in this appeal, however. Under *Beck*, punitive damages are not available. Allegations of a breach of the implied covenant of good faith and fair dealing owed first party insurers and their insured sound in contract, not in tort.

### Release

█ Canyon Country next asserts that the trial court erred by admitting into evi-

dence a release dealing with a separate lawsuit against the state of Utah.[9] It is alleged that the jury could have inferred that any award Goodfellow received personally from his separate lawsuit might properly be offset against the damage award in favor of Canyon Country as a corporation.

The claimed prejudice is so speculative as to be groundless. Jury instructions made it clear that Goodfellow and Canyon Country were two separate entities. The record is also clear that the release and related evidence were properly admitted to demonstrate Goodfellow's lack of credibility and the discrepancies in admitted values of the tractor and trailer. We find no prejudice.

### Jury Instructions

Finally, Canyon Country claims that there was prejudicial error in certain jury instructions which were (a) given but inaccurate and (b) not given but should have been.[10] Because the jury verdict was in favor of Canyon Country, we fail to see the alleged prejudice. We therefore find these claims to be without merit.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Each party is to bear its own costs.

HALL, C.J., HOWE, Associate C.J., and ZIMMERMAN, J., concur.

STEWART, J., concurs in the result.

---

**9.** Goodfellow filed suit for personal injuries against the state on May 16, 1979. He alleged, among other things, that the state had negligently maintained the road on which he was driving. The suit was subsequently settled, and Goodfellow signed a release freeing the state from further claims.

**10.** Canyon Country alleges that defense-related instructions 37, 41, and 68A did not define fraud or misrepresentation and that the burden of proof regarding these defenses was erroneously assigned; that instruction 38 erroneously de-

scribed Skaggs as the insurers' agent; that instruction 52 led the jury to believe that the debt owed on the trailer was discharged in bankruptcy so that it would be improper to compensate Canyon Country for the loss; that instruction 56 led the jury to believe that Canyon Country did not mitigate damages and therefore was not entitled to its lost profits; and finally, that narrow constructions of the law directed the jury to erroneously find in favor of the insurers on various issues.