**John CASTILLO and Maria Castillo, Plaintiffs and Appellants,**

v.

**ATLANTA CASUALTY COMPANY, Defendant and Appellee.**

No. 960532–CA.

Court of Appeals of Utah.

June 12, 1997.

Daniel L. Wilson, Ogden, for Plaintiffs and Appellants.

Robert Neeley, Ogden, for Defendant and Appellee.

Before Judges DAVIS, P.J., WILKINS, Associate P.J., and ORME, J.

## OPINION

ORME, Judge:

Plaintiffs John and Maria Castillo appeal the bench trial judgment denying them consequential damages for the loss of use of their vehicle that resulted from a breach of their insurance contract with defendant insurance company. In addition, they challenge the trial court's valuation of their destroyed vehicle. With minor adjustment, we affirm.

## FACTS

"[W]e consider the evidence in a light most favorable to the trial court's findings," *Butler Crockett v. Pinecrest Pipeline*, 909 P.2d 225, 228 (Utah 1995), and recite the facts accordingly.

Sometime in 1991, Mr. and Mrs. Castillo purchased a 1979 Toyota Celica for approximately $450. Although the vehicle was not in running condition, plaintiffs felt the vehicle was worth more than what they had paid for it.

A few years later, after getting the vehicle repaired for safe operation, plaintiffs purchased from defendant Atlanta Casualty Company a policy of liability insurance, which included coverage for uninsured mo-

torist property damage (UMPD), in the amount of $3,500. On October 30, 1994, while Mrs. Castillo was driving her daughter to a friend's house, an uninsured motorist ran a red light and collided with plaintiffs' vehicle. The collision caused total destruction of plaintiffs' car, as well as physical injuries to Mrs. Castillo.

Approximately one week after the collision, Mrs. Castillo, pursuant to the requirements of the insurance policy, notified the insurer of the loss. It was during this notification process that the insurer misinformed plaintiffs that their policy did not include UMPD coverage, and that, as a result, the insurer would not provide compensation for the destroyed vehicle. The trial court ruled, as a matter of law, that the insurer breached the insurance contract when it erroneously denied plaintiffs' UMPD claim. This ruling is not challenged on appeal.

After being denied coverage by the insurer, plaintiffs sought the advice of an attorney who, upon investigation, determined that their policy did in fact include UMPD coverage. After the attorney's intervention, the insurer ultimately acknowledged its liability. Over the course of the next several months, plaintiffs' counsel and the insurer negotiated in an effort to settle plaintiffs' claim. No agreement concerning the value of the destroyed vehicle was ever reached, and this lawsuit resulted.

Two primary issues were before the trial court: (1) the value of the destroyed vehicle and (2) whether plaintiffs were entitled to attorney fees and loss of use damages as a consequence of the insurer's breach.

Several witnesses were called to testify regarding both issues. Mrs. Castillo testified that she primarily drove the vehicle, and that, prior to the accident, she drove the vehicle "a lot" and the car "r[a]n great." She also testified that, after the accident, she and her husband were not able to afford a replacement vehicle; that if they had had the money, they would have obtained a replacement; that because of their vehicle's loss, she had to borrow vehicles from family members and reimburse them, presumably for fuel; and that she was without transportation for the year preceding trial because a replacement was not obtained.

Mr. Castillo testified that, in his opinion, the car was worth $2,000 prior to the collision; that the car had been driven somewhere between 90,000 and 92,000 miles prior to the collision; that it was inconvenient not having their vehicle; and that he performed numerous repairs on the vehicle after its purchase, including replacing the tires and installing new brakes. Mr. Castillo also testified that, based on his inquiries of four local agencies, it would have cost at least $23 per day to rent a replacement for their destroyed car.

Plaintiffs also called Jerry Shepard, a dealer in used cars, who testified that plaintiffs' car was worth at least $1,900 and perhaps as much as $2,300 prior to the accident. He also testified that the vehicle's odometer read approximately 90,000 miles, which, in his opinion, was less than half the average mileage for a 1979 Toyota Celica still in operation in 1994.

In support of a somewhat lower value figure, the insurer called its own expert, James Gettings, an independent property damage appraiser. In relying on the National Automobile Dealers Association guidebook (NADA), Mr. Gettings testified that the car would have had a fair market value of $1,150 at most. While admitting that low mileage can be an important factor in determining a car's value, Mr. Gettings testified under cross-examination that he thought the low mileage of plaintiffs' car would not affect its value under NADA, reasoning that older cars such as plaintiffs' 1979 Toyota Celica, unlike newer cars, do not benefit in value from low mileage.

The trial court accepted Mr. Gettings's valuation, stating that his demeanor, experience, and method of valuation were more credible than that of Mr. Shepard and Mr. Castillo. Therefore, the court awarded plaintiffs $1,150, minus a $250 policy deductible, for a total of $900 for their destroyed vehicle. The trial court ruled in favor of plaintiffs on the issue of attorney fees as an element of consequential damages, but denied their request for loss of use damages. On this latter point, the trial court ruled that loss of use

damages were not available, as a matter of law, because plaintiffs, albeit due to their lack of funds, did not actually rent a replacement vehicle and thus had incurred no out-of-pocket expense. Therefore, in its judgment entered on December 29, 1995, the trial court awarded plaintiffs $900 as the net value of their destroyed vehicle, $300 for attorney fees, and $280.20 for court costs, for a total judgment of $1,480.20.

## ISSUES ON APPEAL

Plaintiffs raise two issues on appeal: (1) whether the trial court erred in valuing the destroyed vehicle at $1,150 and (2) whether the trial court erred in ruling, as a matter of law, that plaintiffs were not entitled to consequential damages for the loss of use of their vehicle because they did not incur any out-of-pocket expense in obtaining a replacement vehicle or in otherwise dealing with the insurer's breach.

## VALUATION OF PLAINTIFFS' VEHICLE

We first decide whether the trial court erred in valuing the destroyed vehicle at $1,150. Initially, we note that our review of this issue is limited. We defer to the trial court's finding, reversing only if it is clearly erroneous. *See Alta Indus. Ltd. v. Hurst,* 846 P.2d 1282, 1286 (Utah 1993); *Housing Auth. of Salt Lake City v. Delgado,* 914 P.2d 1163, 1165 (Utah.Ct.App.1996). To succeed in their challenge to the valuation finding, plaintiffs must " 'marshal all the evidence supporting the finding and then demonstrate that the evidence is legally insufficient to support the finding[ ] even in viewing it in the light most favorable to the court below.' " *Alta,* 846 P.2d at 1286 (quoting *Reid v. Mutual of Omaha Ins.,* 776 P.2d 896, 899 (Utah 1989)).

Plaintiffs contend two factors point to clear error. First, plaintiffs contend that NADA, relied upon by the insurer's expert to arrive at his valuation figure, expressly provided for an increase in value for vehicles with lower mileage, including plaintiffs' 1979 Toyota Celica, and that the insurer's expert failed to take this into consideration. Second, plaintiffs point to the trial court's Finding Number 28, which states that "it is just as reasonable that the car had [been driven] 192,000 miles" given the age of the car. Plaintiffs argue that because the evidence only supported a finding that the car had been driven 92,000 miles, the trial court was clearly in error in its valuation of the vehicle.

The only record evidence regarding the effect of low mileage on a vehicle's value under NADA was presented by the insurer's expert, Mr. Gettings. Mr. Gettings agreed that NADA treats low mileage as an important factor in determining the value of a used car, but he did not know whether an upward adjustment of fifty percent in value is required on all vehicles with low mileage. Plaintiffs' counsel then asked whether Mr. Gettings had an opinion on the effect of mileage vis-a-vis the value of a vehicle. Mr. Gettings acknowledged that low mileage had a great effect on the value of a newer vehicle, but reiterated his opinion that it had no significant effect on older model vehicles.

Plaintiffs contend on appeal, as they apparently did at trial during cross-examination of Mr. Gettings, that NADA provides for an absolute across-the-board increase in value of a car with low mileage. However, the record before us wholly fails to bear out plaintiffs' position. As stated, the only evidence on this issue was provided by Mr. Gettings, who opined that the low mileage provision in NADA applies only to vehicles of more recent vintage. Significantly, no copy of NADA or any part thereof is in the record. Indeed, even if NADA called for an across-the-board increase in value for low mileage, as plaintiffs contend, it would not foreclose Mr. Gettings from testifying that, in his professional opinion, the low mileage adjustment was properly applied only to newer vehicles. The trial court exercised its discretion in judging the credibility of Mr. Gettings and making its valuation determination accordingly. *See D'Aston v. Aston,* 844 P.2d 345, 355 (Utah.Ct.App.1992) ("Credibility determinations are within the sound discretion of the trial court."). *See also* Utah R. Civ. P. 52(a) ("[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

■ Plaintiffs also argue that because the trial court's Finding Number 28 is clearly erroneous, the ultimate finding of value must necessarily be flawed. We agree that the trial court's Finding Number 28 is clearly erroneous. That finding states that, given the age of plaintiffs' car, "it is just as reasonable that the car had 192,000 miles." This finding, as plaintiffs urge, has no basis in the evidence. All evidence regarding the mileage of plaintiffs' vehicle prior to the collision was to the effect that it had been driven only about 92,000 miles. There was absolutely no evidence before the court that the odometer had ever quit working or that it had gone past 99,999 miles and started over. It was conceded the car had below average mileage, but it was also undisputed that it had been completely out of operation for some unknown period of time. Prior owners were not called nor service records presented to show the extent of use prior to the plaintiffs' ownership. The suggestion in Finding Number 28 that the car might actually have been driven 192,000 miles is purely speculative, with no basis in the evidence, and therefore is clearly erroneous.

However, plaintiffs fail to show how this error led to a clearly erroneous finding that the car was worth $1,150. As stated above, the trial court had before it evidence from Mr. Gettings that the value of the car would not be affected by what he understood to be its low mileage. Stated another way, the evidence from Mr. Gettings, expressly credited by the trial court, indicated that no matter how many miles plaintiffs' vehicle had been driven, its vintage made mileage irrelevant to the question of its value. Therefore, the error in Finding Number 28 was harmless because, given the evidence accepted by the trial court, the car was worth only $1,150 regardless of the mileage it had actually been driven.

## DAMAGES FOR LOSS OF USE

Next, plaintiffs contend that the trial court should have awarded them, as an element of consequential damages, compensation for the loss of use of their destroyed vehicle. They argue that the insurer's unwarranted refusal to timely pay their claim resulted in their living without a car for several months. They contend the damages they sustained are properly measured by the reasonable rental value of a replacement car for the entire period from when their claim should have been paid to when it finally was.

■ In response, the insurer points to the express language of the UMPD provision of plaintiffs' insurance policy, which states that property damage caused by an uninsured motorist does not include loss of use of plaintiffs' covered vehicle. The policy makes clear that loss of use coverage is available for an additional premium, but the evidence at trial indicated that plaintiffs did not avail themselves of this coverage option. In effect, the insurer appears to argue that the monetary limits of the policy invariably define the amount for which it is liable upon a breach of the insurance contract.[1]

Plaintiffs' position is that no such limitation exists. They emphasize that they are entitled to compensation for the time they had no car *not* because they had coverage for loss of use, but because the insurer's breach of its contractual obligation to promptly pay them the net value of their lost car was the foreseeable and proximate cause of their being without a replacement vehicle. Thus, plaintiffs' consequential damages theory is based on general contract law, not the provisions of the insurance policy. They are correct that the policy's provisions on loss of use coverage are irrelevant to their claim premised on the insurer's breach of another policy provision.

■ On the consequential damages issue, the trial court ruled that the loss of vehicle use was a reasonably foreseeable consequence of the insurer's delay in paying plaintiffs' claim.[2] Nonetheless, the trial court

1. The insurer's position in this respect is incorrect. "Although the policy limits define the amount for which the insurer may be held responsible in performing the contract, they do not define the amount for which it may be liable upon a breach." *Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 801 (Utah 1985).

2. The insurer does not challenge the trial court's determination of this issue.

ruled, as a matter of law, that plaintiffs were not entitled to loss of use damages because plaintiffs did not actually incur any out-of-pocket expenses, through lease or otherwise, in obtaining a replacement vehicle. Thus, the dispositive issue before us is whether the recovery of consequential damages attributable to the loss of use of a vehicle in a breach of contract case is limited to reimbursement for actually renting a replacement vehicle or of other out-of-pocket expenses. We review the trial court's conclusion of law nondeferentially, for correctness. *See Pasker, Gould, Ames & Weaver, Inc. v. Morse,* 887 P.2d 872, 875 (Utah.Ct.App.1994).

■ As a general rule, legal damages serve the important purpose of compensating an injured party for actual injury sustained, so that she may be restored, as nearly as possible, to the position she was in prior to the injury. *See* 25 C.J.S. *Damages* §§ 1, 3 (1966). There are generally two types of recoverable damages available to the nonbreaching party in a breach of contract action: general damages, which flow naturally from the breach, and consequential damages, which, while not an invariable result of breach, were reasonably foreseeable by the parties at the time the contract was entered into. *See Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 801 (Utah 1985).

■ The recoverability of consequential damages turns on a three-pronged analysis:

> *First,* [a claimant] must prove that [consequential] damages were in fact caused by the contract breach.... *Second,* [a claimant] must prove the *amount* of his [consequential] damages with a reasonable degree of certainty. *Third,* [a claimant] must convince the court that the damages [he] claims are the kind of damages that *ought* to be allowed. Usually this means he must convince the court that the damages [were] within "the contemplation of the parties" at the time they contracted.

Dan B. Dobbs, *Handbook on the Law of Remedies* § 12.3, at 798 (1973). *See also Exton Drive–In, Inc. v. Home Indem. Co.,* 436 Pa. 480, 261 A.2d 319, 325–26 (1969) (denying recovery of consequential damages because plaintiff failed to show he in fact suffered damages), *cert. denied,* 400 U.S. 819,

91 S.Ct. 36, 27 L.Ed.2d 46 (1970); *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 466 (Utah 1996) (stating consequential damages are limited to those within contemplation of parties at time of contracting); *Heslop v. Bank of Utah,* 839 P.2d 828, 840–41 (Utah 1992) (same); *Beck,* 701 P.2d at 801 (same); *Horton v. Gem State Mut. of Utah,* 794 P.2d 847, 849 (Utah.Ct.App.1990) (same); *Alta Health Strategies, Inc. v. CCI Mechanical Serv.,* 930 P.2d 280, 286 (Utah.Ct.App.1996) (stating damages need only be proven with reasonable certainty and not absolute precision). Thus, to recover consequential damages in a breach of contract action, a claimant must (1) prove that he *in fact* has such damages, (2) establish the *amount* of such damages with reasonable certainty, and (3) show that such damages were within the *contemplation* of the parties at the time of contracting.

Contrary to the trial court's conclusion, it is widely accepted that the right to compensation for loss of use of a vehicle does not hinge upon the owner having actually rented a replacement automobile during the period of such loss of use. *See Holmes v. Raffo,* 60 Wash.2d 421, 374 P.2d 536, 541 (1962) (en banc). *See also Hillman v. Bray Lines, Inc.,* 41 Colo.App. 493, 591 P.2d 1332, 1336 (1978) (holding award for reasonable rental value for owner's loss of use of semi-tractor-trailer was proper regardless of failure to actually rent replacement); *Camaraza v. Bellavia Buick Corp.,* 216 N.J.Super. 263, 523 A.2d 669, 670–71 (App.Div.1987) (where owner suffered inconvenience due to loss of use of vehicle, owner entitled to recover damages for loss of use of automobile even though no replacement vehicle obtained). That loss of use damages are not dependent on the owner's having rented a substitute automobile or having otherwise incurred out-of-pocket expenses is best demonstrated by the case of *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513 (1978).

In *Murray,* a purchaser of a defective motorhome sued the seller of the motorhome alleging, *inter alia,* that he and his family had suffered consequential damages for the loss of the motorhome's use. At trial, the purchaser testified that the motorhome sat

idle for several months and that a family motorhome trip to Colorado was cut short by a week because of the motorhome's mechanical problems. Further evidence indicated that the rental value of a comparable vehicle was about $155 per week. Apart from the purchaser's testimony that the Colorado trip was cut short by a week, there was no basis from which the jury could determine the amount of any damages suffered by the owner due to the loss of use of the motorhome. *Id.* 265 N.W.2d at 526. Nevertheless, the jury awarded the purchaser $2,500 for the loss of use of his motorhome. *Id.* at 525.

In lowering this amount on the ground it was speculative, the appellate court stated:

> Damages for loss of use of a ... vehicle should be founded upon credible evidence of the use which would have been made of the vehicle if not for the defects, *or* upon evidence of expenses actually incurred as a result of the vehicle's inoperability. Such losses should not be calculated simply by reference to the number of days the vehicle sits idle, absent evidence that the vehicle would have been in use for the entire period.

*Id.* at 527 (emphasis added). Thus, according to the court in *Murray*, the plaintiffs could recover for their loss of use by showing either their actual out-of-pocket expenditures in dealing with the seller's breach or by showing how much their vehicle would have been used had it not been for the defects, together with the value of that use.

■ In applying the foregoing rules to the instant case, it is clear that the trial court was incorrect in ruling that plaintiffs could

not recover for their loss of use because they failed to incur any out-of-pocket expenses in dealing with the insurer's breach. Producing receipts for money expended is not a legal prerequisite to recovering consequential damages.[3] However, notwithstanding this legal error, the trial court's decision to deny loss of use damages to plaintiffs can be readily sustained. *See generally Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988) (stating appellate courts "may affirm trial court decisions on any proper ground(s), despite the trial court's having assigned another reason for its ruling"); *State v. Elder*, 815 P.2d 1341, 1344 n. 4 (Utah.Ct.App.1991).

As discussed above, a claim for loss of use damages depends on plaintiffs' ability to satisfy three necessary requirements. *See* Dobbs, *supra*, § 12.3, at 798. It is undisputed that plaintiffs satisfied the third requirement, "contemplation," since the trial court ruled that the parties foresaw that plaintiffs' loss of vehicle use would result from the insurer's failure to promptly pay plaintiffs the value of their vehicle, and this ruling was not challenged on appeal.

Plaintiffs also satisfied their burden of proving the first requirement of consequential damages, in that they proved they in fact suffered a loss of use of their vehicle as a result of the insurer's breach. Mr. Castillo, for instance, testified that it was inconvenient not having the car. Mrs. Castillo testified that she drove her car "a lot" prior to the accident. She also testified that, subsequent to the accident, she was without her car for approximately one year, and, consequently, had to be chauffeured around by her son and

---

**3.** The trial court's ruling was apparently based on its reading of *Canyon Country Store v. Bracey*, 781 P.2d 414 (Utah 1989). In that case, the Utah Supreme Court considered whether an insured could recover attorney fees as an element of consequential damages against its insurer for breach of contract. *Id.* at 419–20. In answering in the affirmative, the Court stated that "attorney fees recovered as damages in a breach of contract suit must be based on the prevailing party's actual losses, i.e., its out-of-pocket expenses for legal counsel." *Id.* at 420. In other words, the Court held that the insured was only entitled to recover the fees it was actually obligated to pay under a contingency fee arrangement with plaintiff's counsel, rather than a higher "reasonable" fee. *Id.* Although the language in *Bracey* might

be taken to support the notion that in order to recover consequential damages there needs to be some proof of actual out-of-pocket expenses, we do not believe that *Bracey* is so narrow as to limit recovery of consequential damages to out-of-pocket expenses only or so broad as to apply to cases involving the loss of use of property. The Court in *Bracey* had before it the question of the best measure of damages in the form of legal expenses—what had actually been spent for attorney fees or what might have been spent under a different fee arrangement. In this context, the Court concluded that the better measure of damages was what was actually spent. *See also Collier v. Heinz*, 827 P.2d 982, 984–85 (Utah.Ct. App.1992) (characterizing *Bracey* as limited in scope).

mother in order to run various errands. In addition, she borrowed as many as three different automobiles belonging to various family members. This testimony, while a little imprecise, clearly established that plaintiffs did in fact suffer damage by reason of the loss of use of their vehicle.

■ Notwithstanding plaintiffs' satisfaction of the first and third requirements, we conclude that plaintiffs have wholly failed to meet the second requirement, namely, proving with reasonable certainty the *amount* of their loss. Plaintiffs testified that they suffered consequential damages to the tune of $23 per day for approximately 330 days, for a total of $7,590 in loss of use damages. The only evidence concerning this amount was that it would have cost plaintiffs approximately $23 a day to rent a replacement vehicle. This evidence was admitted over the objection of defense counsel, but whether it was properly admitted is not before us. Therefore, we accept the $23 figure as what it would have cost plaintiffs to rent a replacement vehicle for a day.

Although it was established how much a replacement would have cost for a day, there is absolutely no proof establishing, with reasonable certainty, the amount of plaintiffs' actual loss. Plaintiffs never rented a replacement vehicle. Also absent from the record is any credible evidence of the use that would have been made of the vehicle which would have been purchased but for the insurer's breach. There was no evidence to dispel the possibility that a replacement vehicle would have just sat idle in front of plaintiffs' home for much of the 330 day period.[4] Even though Mr. Castillo testified to the inconvenience caused by the loss of use of their

vehicle and that they depended on it, there was absolutely no testimony from him or Mrs. Castillo as to how much the family used the car or would have used a replacement.[5]

Nor were alternative damage theories adequately developed. Although there was testimony that Mrs. Castillo paid family members to drive her around, there was absolutely no proof as to how much money was actually expended. There was also no evidence regarding the amount of other expenditures made by the plaintiffs in dealing with the insurer's breach and their ensuing loss of use, e.g., bus passes, cab fare, lost wages due to the inability to get to work, etc.[6]

Plaintiffs argue that denying them consequential damages for the loss of use of their destroyed vehicle, solely on the ground that they did not incur any out-of-pocket expense in obtaining a rental vehicle, acts essentially as a punishment against them for being too financially strapped to deal with the insurer's breach of contract. In support of this argument, plaintiffs cite to *Holmes*, 374 P.2d at 541–42.

The plaintiffs in *Holmes* filed a negligence action against a motorist, claiming damages for injuries sustained in an automobile collision. Part of the relief sought by the plaintiffs was damages for the loss of use of their vehicle during the time of its repair. *Id.* at 537. The trial court refused to instruct the jury regarding loss of use damages, reasoning that because the plaintiffs had not obtained a replacement vehicle, they were not out any money, and therefore had not suffered any damage. *Id.* at 537, 542.

The appellate court in *Holmes* held that recovery for the loss of use of a vehicle is not contingent upon the owner having rented a

---

4. Indeed, Finding Number 23 indicates that Mrs. Castillo was uncomfortable driving any vehicle after the October 1994 accident and that she only drove on occasion at her husband's behest. This finding was not challenged on appeal.

5. Although the record shows that Mrs. Castillo had to be chauffeured around by family members to run occasional errands and that she drove her car "a lot" prior to the accident, the record also indicates that Mrs. Castillo occasionally drove her mother's car instead of her own prior to the accident. Thus, it is not completely clear from the record whether Mrs. Castillo would have

even driven a replacement vehicle after the accident to run her errands. Moreover, Mrs. Castillo's testimony that she drove her car "a lot" is wholly insufficient in proving the amount of plaintiffs' loss.

6. We do not mean by these examples to limit the kind of consequential damages recoverable by a person in a case such as this. These examples only illustrate that such damages must be based on credible evidence that such loss or damage in fact occurred and that the amount of such damage is reasonably ascertainable.

replacement vehicle. *Id.* at 541. To hold otherwise would condition recovery of damages on financial ability alone, and "[t]he law cannot condone such a condition." *Id.* at 542. Plaintiffs are correct that *Holmes* supports their argument regarding the general theory of loss of use damages. Nonetheless, we are unpersuaded by plaintiffs' argument that *Holmes* necessarily demands a reversal of the trial court in the instant case.

In *Holmes,* the plaintiffs indicated, at least to some measurable degree, the amount of loss of use they suffered while their car was being repaired. Unlike the plaintiffs in this case, the plaintiffs in *Holmes* testified that they drove their car, which had been used partially for business and partially for pleasure, approximately 2,000 miles per month. *Id.* at 540. Here, there was neither sufficient evidence of how much plaintiffs' car had been driven prior to the accident, nor of whether a replacement vehicle would have been similarly driven. While we do not doubt the fact that plaintiffs were damaged as a consequence of the insurer's breach and their inability to rent a replacement vehicle due to their financial circumstances, plaintiffs have wholly failed to prove the extent of such damage. Simply stating that a rental car would have cost plaintiffs $23 a day, without some reasonably certain proof of how much plaintiffs would have used the vehicle, i.e., of how many days they had actual need for the replacement, does not satisfy plaintiffs' burden of proof concerning their damages. *See Murray,* 265 N.W.2d at 527.

In summary, plaintiffs proved *at most* only half of the necessary equation. They proved that $23 per day is the reasonable rental value of a replacement vehicle.[7] However, they failed to show on how many days, out of the total 330 day period, they had use for such a car.[8] *See id.* (stating loss of use

"should not be calculated simply by reference to the number of days the vehicle sits idle, absent evidence that the vehicle would have been in use for the entire period"). It is on this basis, rather than because plaintiffs did not actually rent a replacement vehicle, that we sustain the trial court's judgment.

## INTEREST

Although plaintiffs are not entitled to damages for the loss of use of their vehicle, they are entitled to damages for the loss of use of the money that, but for the insurer's breach and ensuing delay, would have been paid to plaintiffs in satisfaction of their insurance claim. Such damages are provided for by statute in the form of prejudgment interest. In Utah, prejudgment interest "represents an amount awarded as damages due to the opposing party's delay in tendering the amount owing under an obligation." *L & A Drywall, Inc. v. Whitmore Constr. Co.,* 608 P.2d 626, 629 (Utah 1980). *Accord Hermes Assocs. v. Park's Sportsman,* 813 P.2d 1221, 1224 (Utah.Ct.App.1991); *Vasels v. LoGuidice,* 740 P.2d 1375, 1378 (Utah.Ct.App.1987); 22 Am.Jur.2d *Damages* § 82 (1988). *See also Trail Mountain Coal Co. v. Utah Div. of State Lands & Forestry,* 921 P.2d 1365, 1370 (Utah 1996) (stating that, as matter of public policy, prejudgment interest compensates party for depreciating value of amount owed and deters intentional withholding of money owed), *cert. denied,* —— U.S. ——, 117 S.Ct. 1017, 136 L.Ed.2d 894 (1997). It may be awarded where "damage is complete, the loss can be measured by facts and figures, and the amount of loss is fixed as of a particular time." *Andreason v. Aetna Cas. & Sur. Co.,* 848 P.2d 171, 177 (Utah.Ct.App.1993).

 In the instant case, the trial court awarded plaintiffs $900 for the value of their lost vehicle without taking into account the

---

7. There was no explanation of what kind of car can be rented for $23 per day. Some downward adjustment might well be appropriate if such a car were much better than what the insurance settlement would have bought. Moreover, an adjustment would presumably have to be made for the costs of gas, oil, insurance, registration, taxes, etc. that plaintiffs *saved* as a result of being without their vehicle.

8. In so stating, we do not mean to imply that all 330 days are necessarily in issue. For instance, loss of use on any days during this substantial pretrial period which followed the insurer's recognition of liability and offer to pay the fair value of the vehicle would not be compensable if plaintiffs unreasonably rejected the offer. Their loss of use after such a rejection would result from their own intransigence rather than any breach by the insurer.

insurer's delay in payment. Because plaintiffs' loss was fixed as of a particular time, could be measured by facts and figures, and was complete prior to the judgment, plaintiffs are entitled to prejudgment interest on the $900 representing the net value of their destroyed vehicle. To determine the amount of interest to which plaintiffs are entitled, we must first determine when interest began to run on the $900 award.

The trial court found that the insurer wrongfully denied coverage around November 6, 1994, approximately one week after the accident. Plaintiffs stipulated that, if the insurer had instead acknowledged its responsibility, the insurer would have been allowed approximately three weeks subsequent to this time to investigate the legitimacy of plaintiffs' claim and issue a check. Accordingly, prejudgment interest started running on plaintiffs' claim on November 27, 1994, and continued until judgment was entered on December 29, 1995. Thus, the insurer owes prejudgment interest on $900 for a total of 397 days. At the legal rate of ten percent per annum, this amounts to $97.89 in interest. *See* Utah Code Ann. § 15–1–1 (1996).

## CONCLUSION

Plaintiffs failed to show that the trial court's ultimate finding of value was clearly erroneous. The trial court erred in ruling, as a matter of law, that loss of use damages are limited to actual out-of-pocket expenses incurred. Nevertheless, plaintiffs failed to sufficiently prove the amount of their damages. Therefore, they are not entitled to damages for the loss of use of their destroyed vehicle. Plaintiffs are, however, entitled to prejudgment interest on the amount of $900. Accordingly, we modify the judgment of $1,480.20 herein by adding the sum of $97.89, making a total judgment of $1,578.09.

Affirmed as modified.

DAVIS, P.J., and WILKINS, Associate P.J., concur.