**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 21 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

SKIER'S EDGE COMPANY, a Utah
corporation,

        Plaintiff-Counter
        Defendant-Appellee,

v.

LADAPA DIE & TOOL, INC., a
Michigan corporation,

        Defendant-Counter
        Claimant-Appellant.

No. 03-4102
(D.C. No. 2:98-CV-441-TS)
(D. Utah)

---

**ORDER AND JUDGMENT** [*]

---

Before **LUCERO**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Ladapa Die & Tool, Inc. (Ladapa) appeals the judgment entered in favor of appellee Skier's Edge Company (Skier's Edge) following a bench trial. Federal diversity jurisdiction was proper under 28 U.S.C. § 1332. We exercise jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment and remand for a modification of the judgment amount in light of Skier's Edge's concession of error, as discussed below.

BACKGROUND

Skier's Edge marketed and sold an exercise and fitness device that simulates downhill skiing, called The Skier's Edge. Skier's Edge sold only one product and marketed it directly to its customers through print advertising. In December of 1996, Skier's Edge and Ladapa entered into a contract for Ladapa to manufacture the frames and various other components of the skiing simulator and ship them to Skier's Edge, who would then complete assembly with components provided by other manufacturers and ship the product to its customers. The contract included a production schedule whereby certain quantities of product were to be shipped from Ladapa to Skier's Edge, as well as quality specifications and other terms. Skier's Edge was to provide tooling and blueprints for Ladapa's use. Claiming that Ladapa had failed to provide the items contracted for, Skier's

-2-

Edge sued under the contract, and Ladapa filed a counterclaim seeking payment for items it had shipped to Skier's Edge.

The district court found that both parties were in breach of the contract as of March 14, 1997, because Ladapa had not met its production requirements and Skier's Edge had not provided accurate blueprints in a timely fashion. The court then found that Ladapa had not performed under either the contract or a subsequent accord and satisfaction, so Skier's Edge was entitled to damages after March 14, 1997. After permitting Skier's Edge to reopen its case to present additional proof of damages, the district court awarded various damages to Skier's Edge, reduced by offsetting damages to Ladapa, for a judgment to Skier's Edge in the amount of $19,209.29.

On appeal, Ladapa challenges the district court's decision to permit Skier's Edge to present additional evidence after resting its case. It also appeals the damages awarded to Skier's Edge for lost profits and advertising expenses. Finally, Ladapa claims that the amount awarded to it for simulators delivered to Skier's Edge was inadequate and not supported by the record.

<u>STANDARDS OF REVIEW</u>

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 (10th Cir. 2001). In this case based

on diversity jurisdiction, we must reach the same legal conclusions the state's highest court would reach. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). There is no dispute here that Utah state law controls.

## ANALYSIS

### (i) Decision to Reopen Evidence

We first address Ladapa's claim that the district court erred in permitting Skier's Edge to reopen its case to present additional evidence of damages. After Skier's Edge rested its case, Ladapa moved for dismissal based on Skier's Edge's failure to present evidence of its lost net profits, arguing that damages could not be awarded based only on the gross figures presented. Skier's Edge immediately moved to reopen its case to elicit more testimony on net profit figures. Aplt. App. Vol. 2, at 518. Upon consideration, the district court denied Ladapa's motion to dismiss and granted Skier's Edge's motion to reopen its case. *Id.* at 527-28. Skier's Edge then adduced evidence of costs it incurred to produce its product and the amount of profits lost on cancelled orders. Ladapa conducted no cross-examination. Ladapa now complains that it was unfairly prejudiced when Skier's Edge was allowed to reopen its case because the additional evidence defeated its dismissal motion.

"A district court has broad discretion to reopen a case to accept additional evidence and that decision will not be overturned on appeal absent an abuse of

-4-

that discretion." *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1197-98 (10th Cir. 1998). In making its decision to reopen, the court should consider the following factors: (1) the timing of the motion, (2) the nature of the additional evidence, and (3) the potential for prejudice to the nonmoving party. *Id.* at 1198.

Here, the district court properly considered these factors. We find no abuse of discretion because the motion was made immediately after Skier's Edge rested its case, the additional evidence was brief and limited to the single issue of net losses, and Ladapa was not unfairly prejudiced by the district court's decision in that it was able to rebut the evidence as a part of its case.

### (ii) Lost Profits

Ladapa also challenges the district court's award to Skier's Edge for lost profits. It asserts that Skier's Edge was entitled only to the loss of its net profits, not gross income, and the evidence was insufficient to establish either the amount of the lost net profits or that Ladapa's breach caused Skier's Edge to lose profits. The district court held that "[b]etween March 17, 1997, and December 16, 1997, thirty-six Skier's Edge customers canceled their orders when Skier's Edge could not fill[] the orders as a direct result of Ladapa's failure to supply skiing simulators on the delivery schedule agreed by the parties." Aplt. App. Vol. 1, at 126. The court held further that Skier's Edge lost gross revenue of $24,370.00 as

a result, and that it was more likely than not that all of those cancellations occurred as a result of Ladapa's breach. *Id.*

With refreshing candor, Skier's Edge concedes that the district court's judgment reflected the lost *gross* revenues, and the correct figure for the loss of *net* revenues was $20,060.40, or $4,309.60 less. Aplee. Br. at 14. Ladapa has not disputed this amount. We remand for the district court to determine any adjustment to the judgment.

Next, Ladapa maintains that the record of the thirty-six customers who canceled their orders does not show any reasons for the cancellation and, therefore, Skier's Edge failed to establish what caused the lost sales. Under Utah law, a party must establish its lost profits with reasonable certainty. *Kilpatrick v. Wiley, Rein & Fielding*, 37 P.3d 1130, 1146 (Utah 2001). This requirement has been described "in terms of proof of sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered." *Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1165 (Utah 1983) (quotation omitted). It "applies to proof of (1) the fact of lost profits, (2) causation of lost profits, and (3) the amount of lost profits." *Id.*

The district court relied on the evidence that, historically, Skier's Edge had very few cancellations between the order and the shipment. Aplt. App. Vol. 2, at 502-03. We conclude, based on a preponderance of the evidence, that Skier's

Edge proved with the requisite reasonable certainty that Ladapa's breach of the contract caused Skier's Edge to lose the profits from those thirty-six orders.

Ladapa also argues that Skier's Edge was not entitled to lost-profit damages because it did not adduce evidence of operational expenses, overhead, or tax expenses for its sales. Therefore, according to Ladapa, the evidence of lost profits was too speculative to support the judgment. Ladapa is correct that only lost net profits are recoverable. *Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986). The amount must be proven by "a reasonable though not necessarily precise estimate." *Id.* Reasonable certainty requires proof of gross profits and, generally, evidence of overhead expenses or other costs of producing income. *Id.*

In this case, Skier's Edge presented evidence of its gross profits and the costs of producing its product. In addition, its witness testified that its expenses for labor were constant, whether or not the parts were available to assemble and ship the simulators. Aplt. App. Vol. 22, at 534. We hold that the evidence permitted the district court "to make a reasonable approximation" of the lost net profits, thereby meeting the certainty requirement. *Cook Assocs., Inc.*, 664 P.2d at 1166.

### (iii) Advertising Expenses

The district court awarded Skier's Edge some of its expenses for print advertising. Ladapa contends that Skier's Edge was not entitled to this award for

two reasons: (1) Skier's Edge did not prove foreseeability, and (2) the award represents an impermissible double recovery.

In addition to general damages, damages recoverable for breach of contract include consequential damages, which are "those reasonably within the contemplation of, or reasonably foreseeable by, the parties at the time the contract was made." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801 (Utah 1985); *see also Castillo v. Atlanta Cas. Co.*, 939 P.2d 1204, 1209 (Utah Ct. App. 1997) (discussing three-pronged analysis for recoverability of consequential damages, including whether they were within the contemplation of the parties at the time of contracting).

Ladapa argues on appeal that the record contains no evidence that it contemplated that it would have to pay Skier's Edge's advertising expenses if it breached the contract. Skier's Edge responds that Ladapa's president knew that Skier's Edge marketed its product through print advertising, citing testimony not included in the appendix on appeal. We cannot review this claim because Ladapa has failed to provide a sufficient record for us to determine whether the testimony of its president showed that Ladapa reasonably foresaw at the time of contracting that if it failed to provide simulators under the contract, it would be responsible for Skier's Edge's advertising expenses. Ladapa, as the appellant, was required to include in the record a transcript of all evidence relevant to the finding or

conclusion it claims is unsupported by the evidence. Fed. R. App. P. 10(b)(2).

"Where the record is insufficient to permit review we must affirm." *Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000).

Ladapa further argues that the award of advertising expenses represented a double recovery because Skier's Edge already received an award for its lost profits. The lost profits, discussed above, pertain to only thirty-six orders that were placed and later canceled. Skier's Edge was not awarded any sum for orders it claims would have been placed if it had had simulators available to ship immediately. Skier's Edge adduced evidence that often a potential customer would not place an order upon learning that the simulator would not be shipped immediately. Aplt. App. Vol. 2, at 418. It was not unreasonable for the district court to award a portion of the advertising expenses as compensation for those lost sales.

## (iv)  Counterclaim

Finally, we address Ladapa's argument that the district court improperly computed the amount it was owed on its counterclaim. Ladapa asserts that it delivered to Skier's Edge 2,062 simulators, all of which were accepted, but the district court awarded payment for only 1,549 of them. The exhibits on which Ladapa relies for this claim do not support it. Those exhibits do not refer to 2,062 simulators, and to the extent they do refer to simulators, they demonstrate

that Skier's Edge promptly rejected a substantial portion of them. Aplt. App. Vol. 2, at 629-34. Accordingly, we decline to disturb the amount awarded to Ladapa on its counterclaim.

CONCLUSION

The judgment of the district court is AFFIRMED and the case is REMANDED for a modification of the judgment amount to be determined by the district court, as discussed herein.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge