SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD COMPANY, Respondent, v. THE BOARD OF EDUCATION OF SALT LAKE CITY, Appellant.

No. 1951. Decided January 14, 1909 (99 Pac. 263).

1. APPEAL AND ERROR—REVIEW—SCOPE. The Utah statutes governing appellate procedure contemplate but one record on appeal, and all questions involved may be determined upon an appeal from the judgment. (Page 16.)

2. APPEAL AND ERROR—CROSS-APPEALS—NECESSITY FOR. If an appeal is from a specific part of the judgment, and respondent desires review of matters not coming within the appeal taken, he must take a cross-appeal; but, where the whole judgment is appealed from, he need not do so. (Page 16.)

3. APPEAL AND ERROR—VOLUNTARY DISMISSAL—RIGHTS OF PARTIES. An appeal is within the control of the parties only as to questions presented by them respectively, and appellant can dismiss his appeal, and thus defeat reversal or modification of the judgment, on his assignment of errors, but the dismissal does not preclude respondent from being heard on an assignment of cross-errors, nor affect the Supreme Court's power to pass on, or correct, any error disclosed by the record falling within respondent's assignment, nor if necessary to affirm, reverse, or modify the judgment. (Page 17.)

4. APPEAL AND ERROR—ASSIGNMENT OF ERRORS—NECESSITY FOR. An error cannot be reviewed unless raised by assignment of error. (Page 18.)

5. APPEAL AND ERROR—ASSIGNMENT OF ERROR—ABANDONMENT. An error assigned, but not mentioned in the brief or argued, is abandoned. (Page 18.)

6. APPEAL AND ERROR—CROSS-APPEALS—COPARTIES. Coparties desiring relief against each other on appeal should present their matters by cross-appeal. (Page 20.)

7. APPEAL AND ERROR—CROSS-ERRORS—SERVICE. All who are affected by cross-errors assigned must be served with them, so that they may answer them, though some of such parties may not join in the appeal. (Page 21.)

8. EMINENT DOMAIN—INTEREST—COMPUTATION. Interest on damages for land condemned for railroad purposes should be computed from the time the company takes possession, and not from the date of the judgment.[1] (Page 22.)

9. EMINENT DOMAIN—DAMAGES—MEASURE. The measure of damage for condemnation, for railroad purposes, of land used for school purposes is the diminution of the value of the property when used for school purposes, caused by the construction and operation of the railroad, determined as of the date of taking of possession. (Page 23.)

APPEAL from District Court, Third District. *Hon. T. D. Lewis,* Judge.

Action by the San Pedro, Los Angeles & Salt Lake Railroad Company against the Board of Education of Salt Lake City. From the judgment, defendant appeals, and plaintiff presents cross-errors.

AFFIRMED.

*Ray Van Cott* and *E. B. Critchlow* for appellant.

*Pennel Cherrington* for respondent.

FRICK, J.

This appeal was regularly filed, the case docketed, and thereafter set for hearing at the October term of this court. On the 14th day of that month, in the absence of respondent's counsel, and without notice to him, counsel for appellant

---

[1] Citing Fell v. P. Ry. Co., 32 Utah 101, 88 Pac. 1003, and Kimball v. Salt Lake City, 32 Utah 253, 90 Pac. 395, 10 L. R. A. (N. S.) 483. See, also, 32 Utah 305, 90 Pac. 565, 11 L. R. A. (N. S.) 645.

appeared in open court, and asked that the appeal be dismissed. An order dismissing the appeal was duly made and entered pursuant to request. A few days after the order had been entered, counsel for respondent in open court advised the court that he had served and filed an assignment of cross-error, that the appeal had been dismissed without his knowledge or consent, and that he desired to be heard upon the cross-error assigned, notwithstanding the dismissal of the appeal. Appellant's counsel questioned the right of respondent to be heard upon the cross-error assigned, in view that the appeal had been dismissed. The application of respondent, with the consent of opposing counsel, was then set for hearing on a day named by the court. On that day counsel for both parties appeared, and submitted the matter on briefs, in which the contentions of both sides are set forth both as to the right to be heard on the assignment of cross-error and with respect to the merits involved upon it. The question with regard to respondent's right to be heard on the assignment of cross-error, notwithstanding the dismissal of the appeal, therefore, is first in order. The contentions and argument of counsel for appellant, when stated in condensed form, are: (1) That appellant had an unconditional right to dismiss its appeal; (2) that upon the dismissal of the appeal the case is no longer pending in this court for any purpose; and (3) that in any event respondent cannot obtain affirmative relief by an assignment of cross-error, but in order to entitle it to such a cross-appeal is necessary.

From the research made by the diligent counsel representing both parties, and upon an independent search on our part, the fact is disclosed that the authorities are not very numerous upon the question involved. In some jurisdictions, notably in Alabama, Illinois, and Kentucky, the question with regard to the assignment of cross-errors and their scope is regulated by statute. In other jurisdictions the matter is to some extent regulated by rules of court, and in still others the practice is made to conform, as nearly as possible, to that

prevailing at common law when applied to the reformed procedure established by the Codes. Before referring to the authorities we will consider the question in the light afforded by our own statutes and rules of court relative to the taking of appeals, and the practice relating thereto. In our appellate procedure all cases are brought to this court by appeal from a final judgment only. Section 3302, Comp. Laws 1907, provides what shall constitute the record on appeal in every case. Other sections provide just how this record shall be prepared and certified, and when and how it is to be filed so as to bring the case to this court. All appeals are initiated by filing and serving a notice of appeal by the appellant upon all the adverse parties affected by the judgment appealed from. The statute also provides that an appeal may be taken from the whole or any part of the judgment, and in the notice of appeal the scope thereof must be designated. It is also provided that in case of an appeal the original papers filed in the court below shall be sent to this court, unless the trial court, for good cause shown, directs copies thereof to be transmitted. The procedure with regard to making up a record on appeal is so arranged by our statutes that every party in interest may suggest amendments or additions to be made, so that the whole proceedings as they took place in the court below may be brought up to this court for review on an appeal and upon one record. After the case has reached this court, and the record is abstracted and printed by the appellant, any adverse party having an interest in the judgment appealed from may, under the rules of this court, present an additional abstract, so as to bring all matters involved in the appeal to the attention of this court. This court is also given full power to reverse, affirm, or modify any judgment appealed from.

From the foregoing there is little, if any, room for doubt that there is but one record on appeal contemplated, and that all questions involved in an appeal may be determined and disposed of upon the appeal taken

from the judgment. No doubt, if the moving party appeals only from a specific part of the judgment, and the respondent desires matters reviewed that do not come within the appeal as taken by the appellant, then, in order to bring such matters to the attention of this court, the respondent is required to take a cross-appeal; but, where the whole judgment is appealed from, we can conceive of no good reason why a cross-appeal is necessary. This, also, seems to be the theory upon which rule 26 of this court (97 Pac. x) is based. By that rule the appellant is required to file and serve an assignment of the errors upon which he relies, within a specified time after he has filed the transcript on appeal. By the same rule the respondent, within a certain time, is required to serve and file his assignment of cross-errors, and upon the assignment of errors by appellant, and the assignment of cross-errors by respondent, the case is prepared for hearing and is heard and finally determined by this court. By rule 8 of this court (97 Pac. viii) it is also provided that, if the appellant fails or neglects to file the printed abstract required by rule 6, the respondent may prepare the case for hearing, and have it heard upon his abstract; or, if he does not desire to do so, the appeal may be dismissed. It would seem, therefore, that after an appeal is taken the case is not entirely within the control of either party, except in so far as pertains to the questions presented by the respective parties; that is, the appellant may, as a matter of course, dismiss his appeal, and such dismissal deprives this court of the power to reverse or modify the judgment on his assignment of errors, but it does not deprive the respondent of the right to be heard upon his assignment of cross-errors, nor does it affect the power of this court to pass on and correct any error disclosed by the record which falls within respondent's assignment, nor, if necessary, to affirm, reverse, or modify the judgment.

We have repeatedly held that no error can be reviewed by this court unless it is assigned and argued. If no error is

assigned, nothing is presented for review, and if assigned, but not mentioned in the brief or argued, it is abandoned. Therefore to merely appeal to this court presents nothing. In order to have this court pass upon the **4, 5** merits an assignment of error is imperative. In view of our statutes and rules of procedure, we can see no good reason for holding that a respondent is deprived of a hearing upon his assignment of cross-errors simply because the appellant refuses to proceed with or to submit the case upon the errors assigned by him. The record is here, and, as we have seen, is not here in the interest of one party only, but is here for all purposes, and in the interest of all who are parties to the action and have an interest in the result. Nothing whatever could be gained by a cross-appeal, except in the instance we have indicated, where an appellant appeals only from a part of the judgment, but even in such a case the respondent may be heard upon all questions that are involved in the appeal as taken. By a reference to the cases which, in our judgment, are in point upon the question, we think it will be found that they fully sustain our conclusions.

In the case of *Feder v. Field,* 117 Ind. 396, 20 N. E. 129, Mr. Chief Justice Elliott bases his conclusions upon reasons that seem to us, not only convincing, but unanswerable. He there lays down the rule that an assignment of cross-error, regardless of statute, is a matter of right, and that an appellant cannot deprive the appellee of the right to be heard upon his cross-errors by dismissing the appeal. The rule is also invoked in that case that by the appeal the appellate court has acquired jurisdiction of the case, and, having once acquired jurisdiction for one purpose, it will be retained for all purposes. In speaking of the rule which permits an appellee to be heard upon his cross-errors, Mr. Chief Justice Elliott says:

"The rule has much to commend it. Under its operation one appeal brings to the appellate court the entire controversy. By the one appeal as much can be accomplished as by two distinct appeals. If separate appeals were taken, then the only method of avoiding con-

fusion would be to consolidate the cases, and this, while it would accomplish no more than a single appeal, would greatly increase the record and augment the costs. The rule is in harmony with the spirit of our Code, since it tends to bring the merits of a controversy before the court in a short and simple method. It is consistent with the leading purpose everywhere manifested in our system of procedure to bring all the parties concerned in a controversy, and all the questions growing out of a legal dispute, into court in one proceeding, so that, by one judgment or decree, the whole controversy may, if possible, be forever put at rest."

The question was again considered by the same court in the case of *Patoka Township v. Hopkins,* 131 Ind. 142, 30 N. E. 896, 31 Am. St. Rep. 417. In that case the question arose with regard to the extent of the relief that may be granted upon the cross-errors assigned. Mr. Chief Justice Elliott again speaks for the court. At page 146 of 131 Ind., at page 897 of 30 N. E. (31 Am. St. Rep. 417), he says:

"It is a mistake to suppose that an appellee, who properly saves a question and duly presents it by an assignment of cross-errors, is not entitled to affirmative relief. An appellee may do more than save costs or prevent a reversal by properly assigning cross-errors. He may in many instances accomplish as much by the assignment of cross-errors in a case appealed by his adversary as by himself prosecuting an appeal."

In that case a judgment was accordingly reversed on appellee's assignment of cross-errors. The Supreme Court of Ohio, in *Shinkle v. First National Bank,* 22 Ohio St. 516, is in full accord with the doctrine as declared by the Indiana Supreme Court, *supra.*

In *Caperton v. Wanslow,* 18 Tex. 125-134, the doctrine is enforced to the extent that where, as in that case, the appellee prosecuted a cross-appeal and prevailed in the appellate court, the costs on the cross-appeal were taxed against him upon the sole ground that he could have presented all the questions arising upon the record on an assignment of cross-errors. This case is followed in the case of *Carroll v. Carroll,* 20 Tex. 741, 742. The question was again before the Court of Civil Appeals of Texas in the case of *Gillespie*

*v. Crawford,* 42 S. W. 621, in another form. In that case
it was held that the rule does not apply as between
coparties. This, no doubt, is a reasonable limitation.          **6**
If codefendants desire relief as against each other
they must in any court present their claims by cross-com-
plaints. In case they seek such relief in the appellate court,
there is no good reason why they should not present their
matters on a cross-appeal, and not confuse the appeal which
relates only to the parties in their capacity as appellants or
appellees. The right to assign and to be heard on cross-
errors is also recognized in 2 Ency. Pl. & Pr. 970, and
in 2 Cyc., p. 1010. The cases given in Cyc. as holding
to the contrary rule do not support the statement. We have
carefully examined the cases there cited, and in our judg-
ment in none of them is the question squarely presented or
determined. Counsel for appellant must have arrived at
the same conclusion, since they do not cite any cases men-
tioned in Cyc., and it seems they found no others that are
in point upon their side of the question.

It may be contended that the cases other than those cited
from Indiana do not decide, in case the appellant dismisses
his appeal, what the rights of the appellee are. That they
do not directly pass upon that phase of the question is no
doubt true, but they all hold to the doctrine that the whole
case is in court, and that an appellee may avail himself of
the entire record to make assignments of cross-errors, and
that these assignments are not limited to defensive matter
merely, but that affirmative relief may be asked for and
obtained thereby. When once an unlimited right to assign
cross-errors is conceded, then the right to make them offensive,
as well as defensive, together with the right to be heard
upon them and to have them passed upon and determined
by the appellate court necessarily follows as a corollary to
the unqualified right to make and present them to the court.
We can see no logical escape from the conclusion in view
of our statutes relating to appellate procedure and of the
rules of this court, except that a respondent cannot be de-

prived of the right to be heard on his assignment of cross-errors when properly served and filed, regardless of whether the appellant desires to proceed with his assignments upon the appeal or not.

That under certain circumstances the assignment of cross-errors must be served upon the parties who do not join in the appeal with appellant is true. The rule in that regard is doubtless the same as it is with regard to serving a notice of appeal. All who are affected by the cross-errors assigned must be served with them, in order that the same may be answered by the parties affected thereby, if they desire to do so. In this case there are no such complications, and the question presented for review was properly raised in the court below, and the assignment of cross-error was properly served and filed as required by rule 26 of this court. From what has been said it follows that, while the order dismissing the appeal must stand, nevertheless the respondent has the right to have his assignment of cross-error considered and determined.

We will therefore now proceed to the consideration of the only cross-error assigned. The record discloses that the action was instituted by respondent to condemn a certain strip of ground owned by appellant to be used for railroad purposes by respondent. Appellant in its answer set forth, and the evidence tended to establish, that the entire parcel of ground from which the strip was sought to be taken was used for school purposes; that a schoolhouse was located thereon, at which a large number of children of school age attended; that the construction of the railroad would interfere with the successful maintenance of said school, and would require the appellant to abandon the whole of the parcel of land not taken for school purposes. The respondent contended, and the jury so found, that the parcel of land not taken and the building situated thereon were not affected to the extent of making them entirely unsuitable for school purposes. The court submitted the question of damages to the jury, and left it to them to determine how much the value of the prop-

erty not taken was depreciated by reason of the construction and operation of the railroad. As a guide to the jury the court, in effect, told them that if they found that the location and operation of the railroad affected the property so that it could no longer be used for school purposes, then the measure of damages would be the difference of the value for school purposes and what it would be worth for other purposes; and, if they found that it was not entirely destroyed for use for school purposes, then the damages to be allowed would be the amount of depreciation of the property for school purposes which was caused by the location and operation of the railroad. The jury found the value of the strip taken, by consent of both parties, to be $250, and against such consent found the depreciation of the value of the property not taken to be $2,500. The court instructed the jury not to calculate interest upon the damages found by them, but reserved the right to compute interest thereon after the return of the verdict. After the verdict was returned, the court computed interest at the legal rate upon the whole amount, to wit, $2,750 from the date that respondent took possession of the condemned strip and entered judgment accordingly. After the appeal was taken by appellant, and within the time allowed by rule 26 of this court, the respondent served and filed his assignment of cross-error, alleging that the court erred in awarding judgment for interest upon the $2,500 damages, and it is now urged that the judgment is erroneous to that extent. It is contended that this case falls within the class of cases where interest cannot be allowed until after verdict and judgment.

We had occasion to pass upon the question with regard to the allowance of interest in the case of *Fell v. U. P. Ry. Co.,* 32 Utah 101, 88 Pac. 1003. In that case the authorities are, to a considerable extent, collated and reviewed, and we there attempted to state a rule with regard to when and under what circumstances interest, under our statute, would or would not be allowed before verdict and judgment.

Counsel for respondent does not criticise the rule there announced, but insists that this case falls within the class of cases in which we held interest may not be allowed before judgment. The principle involved here, in our judgment, is not distinguishable from the one in the case of *Kimball v. Salt Lake City*, 32 Utah, 253, 90 Pac. 395, 10 L. R. A. (N. S.), 483, which was decided only a short time after the Fell Case was decided. The Fell Case is referred to in the Kimball Case. In view of the rule laid down in that case we think the trial court was right in allowing interest as it did. In this case the damages had to be ascertained by a legal standard or measure, and in accordance with fixed rules of evidence. The amount of damages the appellant was entitled to recover, and what the jury permitted it to recover, was the diminution of the value of the property when used for school purposes which was caused by the construction and operation of the railroad. It is no doubt true, as counsel suggests, that the operation of the railroad was an element—perhaps the principal element—which caused the damages to the property not taken. It is therefore urged by him that the damages were in one sense incomplete and continuing. Counsel, however, overlooks the fact that this was merely an element in the case which, while augmenting the damages, nevertheless it did not control the principle involved. The principle with regard to ascertaining the damages was precisely the same as if the property had all been taken and appropriated for railroad purposes. In case this had been done the only question would have been the market value of the property, but this market value could have been proved by the same witnesses, and under the same rules of evidence, as the diminution of the value. Again, if we assume that the property would have been made wholly unfit for school purposes, the damages would have been the difference, if any, between the value of the property when devoted to school purposes and what its value would have been for any other purpose for which it was adapted. This value would again

have been ascertainable in the same way. If we now apply the rule to a case like the one at bar the diminution of the value is still ascertained in the same way and under the same rules. While the operation of the railroad is not an element in the instance first mentioned, and because it is in the second and third instances, does not affect either the rule of evidence or the certainty of the standard or measure of damages, but goes only to the amount that should be allowed as damages. That amount is fixed, not at what the property is worth at some future time, but at what it was worth at the time the respondent took possession thereof; and the diminution of value, from whatever cause, is also determined as of that time. We, therefore, have a case in which, for the purpose of fixing damages, the injury is complete; the damages are ascertained by the ordinary rules of evidence and according to a known standard or measure of value. And all this must be determined from competent evidence, which is binding upon both the court and jury. The jury, therefore, only had a right to exercise their judgment within the limits of the evidence upon the question of value. It is not a case where it was left to the jury to determine the amount of damages from a mere description of the wrongs done or injuries inflicted whether to person, property or reputation. Respondent's cross-error, therefore, cannot be sustained, and the judgment must be affirmed.

In view that appellant dismissed and thus abandoned the appeal, all costs of appeal which had accrued up to the time the appeal was dismissed will be taxed to appellant, and all costs that have accrued since the dismissal of the appeal, including the printing of the briefs, will be taxed to respondent. It is so ordered.

STRAUP, C. J., and McCARTY, J., concur.