**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

AE, INC., a Colorado corporation,

Plaintiff–Appellant,

v.

No. 07-1526

THE GOODYEAR TIRE & RUBBER
COMPANY, an Ohio corporation,

Defendant–Appellee.

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:05-CV-01317-LTB-MJW)**

Stephen G. Masciocchi (David L. Black, Anthony J. Navarro, William W.
Maywhort, and J. Lee Gray, with him on the briefs), Holland & Hart LLP,
Denver, Colorado, for Plaintiff–Appellant.

Roger P. Thomasch (Mary A. Wells and L. Michael Brooks, Jr., Wells, Anderson
& Race LLC, with him on the briefs), Ballard, Spahr, Andrews & Ingersoll, LLP,
Denver, Colorado, for Defendant–Appellee.

Before **KELLY**, **LUCERO**, and **MURPHY**, Circuit Judges.

**LUCERO**, Circuit Judge.

Plaintiff AE, Inc. ("AE") suffered property damage caused by a defective heating system designed in part by defendant Goodyear Tire & Rubber Company ("Goodyear"). After a jury awarded damages, the district court declined to award prejudgment interest under Utah law. It employed a presumption that damages are not calculable when a plaintiff provides varying damages estimates over the course of litigation, as was the case here. Because the jury had not adopted AE's damages calculation, the court held that AE failed to rebut this presumption. AE now appeals, seeking reversal of the court's prejudgment interest ruling.

This case requires us to revisit our understanding of Utah's standard for awarding prejudgment interest. Although the Utah Supreme Court established over one hundred years ago that such interest is appropriate when "the injury and consequent damages are complete and must be ascertained as of a particular time and in accordance with fixed rules of evidence and known standards of value," Fell v. Union Pac. Ry. Co., 88 P. 1003, 1007 (Utah 1907), subsequent courts have been inconsistent in describing the proper test. Thankfully, the Utah Supreme Court recently returned to this question to explain that the Utah courts' various formulations have not altered the fundamental Fell question: "[T]he standard focuses on the measurability and calculability of the damages." Encon Utah, LLC v. Fluor Ames Kraemer, LLC, 210 P.3d 263, 272 (Utah 2009).

We conclude that under Encon Utah, the district court employed an improper presumption that AE was not entitled to prejudgment interest simply

because its damages estimates were inconsistent. However, even absent such a presumption, we affirm the district court's ruling that AE is not entitled to prejudgment interest. The evidence at trial required the jury to exercise vast discretion in assessing the necessity, scope, accuracy, and precision of AE's claimed damages. Because such determinations "are peculiarly within the province of the jury to assess at the time of the trial," Fell, 88 P. at 1006, AE's damages are not sufficiently calculable to serve as the basis for prejudgment interest under Utah law.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Central to the dispute before us is a house in Deer Valley, Utah (the "AE house") owned and managed by AE, a Colorado corporation created for this sole purpose. At a cost of approximately $4.5 million, the 13,000-square foot house was built in the early 1990s for the Katzenberg family by New Star General Contractors ("New Star"). At the time the AE house was built, Goodyear produced a hose called Entran II for use in hydronic radiant heating and snowmelt systems manufactured by Chiles Power Supply Company ("Heatway systems"). The AE house utilizes a Heatway system, and thus Entran II is embedded throughout the house and its outdoor areas.

---

[1] Throughout the opinion, we use "calculable" as shorthand for "sufficiently calculable to serve as the basis for prejudgment interest under Utah law."

In 1999, AE learned that Heatway systems in two other properties had failed due to problems with Entran II. At a meeting of companies responsible for installation and maintenance of the AE house's Heatway system, AE was told that those failures were due to "batch problems" and that the Entran II used in the AE house was manufactured well after the suspect batches. Chiles wrote to Jeffrey Katzenberg assuring him that the Entran II in the AE house was in quite good condition and there were no visible signs of deterioration. Around the same time, a Katzenberg employee asked New Star how much it might cost to replace the Entran II. Based on a figure of $50 per square foot, New Star came up with a total of $650,000.

Sometime after April 1, 2000, Katzenberg and AE learned that the Entran II hose used in the AE house was, in fact, defective. On July 14, 2005, AE filed a products liability action against Goodyear in the United States District Court for the District of Colorado.[2] Among other claims, AE alleged negligent product design and manufacture, negligent failure to warn, strict liability for design and manufacture defect, and strict liability for failure to warn.

Goodyear and AE stipulated to Goodyear's liability on these claims. AE's remaining claims were dismissed, and the case went to trial on three issues: Goodyear's statute of limitations defenses, the repair or replacement costs

---

[2] AE was one of a number of plaintiffs in the original lawsuit, but none of the other plaintiffs is party to this appeal and their claims are not at issue.

resulting from the defective Entran II, and the amount of other associated damages. Goodyear agreed to pay 50% of any damages award.

At trial, New Star's president David Love testified for AE as a cost estimation expert for construction and remodeling projects. Love first described the AE house's construction, highlighting a number of unusual and expensive materials used in the house, including inland cedar and antique chestnut. He then testified regarding the estimates New Star developed to replace the Entran II. Regarding the 1999 estimate of $650,000, he explained that it was based on "[a]bout five minutes worth of thought process." Love stated that he did not begin to seriously consider replacement costs until approximately a year before trial. From that point, New Star produced approximately ten different replacement cost estimates, ranging from about $3.8 to $5.5 million.

When asked what caused the estimates to shift, Love explained that "nobody really knew exactly what was going to have to happen to take out the Entran." As an example, he explained that New Star originally estimated only floor-replacement costs but realized that walls would likely be damaged during construction, requiring a "guess [about] how far up the wall you're going to have to keep taking off product." When describing the difficulty of removing floors from beneath the walls, he admitted, "That's another thing that quite frankly we didn't think about until I thought of it last night."

At the time of trial, New Star's replacement cost estimate was

$5,110,648.51. Based on a 12-month repair schedule, the estimate included a security guard and an on-site cleanup crew, a permitting section (which Love admitted was "a guess"), and a number of items labeled "allowances." As to the latter, Love explained that because "this job is so insane, [he] d[id]n't feel comfortable about doing this job on a lump-sum basis." Thus, the estimate included many round figures such as $25,000 for landscaping and $300,000 for cabinetry. He also testified that some calculations were disputed within New Star, such as the amount of material that would be salvaged, saying, "Everybody thinks I'm wrong. They think there's no way that you're going to save as much product as you think you are, Dave. Time will answer that." Finally, he testified that the estimate included a "contingency" of over $460,000 "for things that we don't know about, and that's what I think we're going to need."

Goodyear's counter-expert was Evan Farnsworth, the chief estimator for a Park City general contractor. At Goodyear's request, he had prepared an estimate for replacing the Entran II in the AE house based on plans and documents provided by AE, concluding that the repair would cost $678,790. At trial, Farnsworth explained why he disagreed with the necessity, cost, and scope of most of the items in New Star's estimate. According to Farnsworth, the project would take five months and would not require many of the employees included in New Star's estimate. He also testified that the project could be completed with significantly less collateral damage than New Star anticipated.

In addition, Farnsworth explained large variations between his and New Star's estimates on specific line items. For example, Farnsworth stated that, in accordance with accepted methods, his approach would eliminate the use of hose underneath the cabinetry, thus obviating the need for cabinetry work. Another contrast, he explained, was that at the established market rate, the concrete work should cost five times less than New Star estimated. Further, Farnsworth testified that his contingency, overhead, and profit figures were much lower than New Star's. Ultimately, he averred that his company had committed to completing the project for the estimated $678,790 price if AE hired it to do so.

At the close of trial, the jury concluded that: (1) Goodyear failed to prove its statute of limitations defenses; (2) the reasonable repair and replacement costs were $3,489,000; and (3) other reasonable costs and losses totaled $848,611. Because the parties had agreed before trial that Goodyear would pay half of any damages award, the jury's findings resulted in a total judgment against Goodyear of $2,168,805.50. Applying Utah law, the district court held that AE was not entitled to prejudgment interest because its damages were not complete and because it had failed to overcome a presumption that its damages were not calculable.

AE appeals the denial of prejudgment interest.

**II**

It is well-established that a "federal court sitting in diversity applies state

- 7 -

law, not federal law, regarding the issue of prejudgment interest." Loughridge v. Chiles Power Supply Co., 431 F.3d 1268, 1288 (10th Cir. 2005) (quotation omitted).  Although an award of prejudgment interest is generally reviewed for abuse of discretion, "any statutory interpretation or legal analysis underlying such an award is reviewed de novo."  Id. (quotation omitted).

**A**

Utah's prejudgment interest rule[3] on unliquidated damages has remained largely unchanged in the hundred years since it was established in Fell.  As the Utah Supreme Court recently explained:

> Prejudgment interest may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures.  Prejudgment interest is appropriate when the loss has been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.

Encon Utah, 210 P.3d at 272 (quotations, alteration, and footnote omitted).  This standard has generally been applied as a two prong test:  (1) whether the damages are complete and (2) whether they can be measured by fixed rules of evidence and known standards of value.  Smith v. Fairfax Realty, Inc., 82 P.3d 1064, 1068

---

[3] Although the forum state is Colorado, the parties agree that Colorado would apply Utah law on the question of prejudgment interest.  AE, Inc. v. Goodyear Tire & Rubber Co., 168 P.3d 507, 512 (Colo. 2007); see Fed. Ins. Co. v. Tri-State Ins. Co., 157 F.3d 800, 802 (10th Cir. 1998) ("In a diversity case a federal court must apply the choice of law rules of the forum state." ).

(Utah 2003).

In <u>Fell</u>, the Utah Supreme Court explained that "[i]n the class of cases . . . where the damage is complete, and the amount of the loss is fixed as of a particular time, there is—there can be—no reason why interest should be withheld merely because the damages are unliquidated." 88 P. at 1006. This is because "the purpose of awarding prejudgment interest is to compensate a party for the depreciating value of the amount owed over time and, as a corollary, to deter parties from intentionally withholding [that] amount." <u>Encon Utah</u>, 210 P.3d at 275 (quotation omitted). Thus, under Utah law, award of prejudgment interest should generally turn, not on the vagaries of litigation, but on whether the "loss is fixed as of a particular time." It should be denied when the damages "are incomplete and peculiarly within the province of the jury to assess at the time of trial." <u>Fell</u>, 88 P. at 1006.

Since <u>Fell</u>, the Utah Supreme Court has applied this principle and upheld or awarded prejudgment interest in a number of situations: for the diminution in property value of a house due to a street grade change, measured from the date the street work was completed, <u>Kimball v. Salt Lake City</u>, 90 P. 395, 397 (Utah 1907); for the diminution of the value of property due to construction of a railroad, calculated from date the railroad took possession of the land, <u>San Pedro, L.A., & Salt Lake R.R. Co. v. Bd. of Educ. of Salt Lake City</u>, 99 P. 263, 267 (1909); for negligent engineering, determined from the date the affected property

was destroyed, <u>Uinta Pipeline Corp. v. White Superior Co.</u>, 546 P.2d 885, 887 (Utah 1976); for unpaid royalties, assessed from the date each payment was due, <u>Trial Mountain Coal Co. v. Utah Div. of State Lands & Forestry</u>, 921 P.2d 1365, 1371 (Utah 1996); for the breach of a fiduciary duty for an illegal property transfer, measured from the transfer date, <u>Smith v. Fairfax Realty, Inc.</u>, 82 P.3d 1064, 1070 (Utah 2003); and for breach of contract, calculated from the date the claim was filed, <u>Encon Utah</u>, 210 P.3d at 272-75.

We are also guided by cases in which the Utah Supreme Court has denied prejudgment interest. In <u>Canyon Country Store v. Bracey</u>, 781 P.2d 414 (Utah 1989), the court held that prejudgment interest was not available for Canyon Country's lost profits:

> While the basis of the "formula" used to determine Canyon Country's lost profits may have been sufficient for the jury to render a verdict in favor of Canyon Country, it is too speculative to allow for the addition of prejudgment interest. The store was not an established business with a long-term history of profits.

<u>Id.</u> at 422. Similarly, in <u>Cornia v. Wilcox</u>, 898 P.2d 1379 (Utah 1995), the court denied prejudgment interest on a claim for breach of an agistment contract[4] because the jury heard conflicting and diverging evidence regarding almost every aspect of the loss of livestock: their "expected gender, weight range, mortality

---

[4] For the city-slicker audience: agistment is "[a] type of bailment in which a person, for a fee, allows animals to graze on his or her pasture; the taking in of cattle or other livestock to feed at a per-animal rate." Black's Law Dictionary 73 (8th ed. 2004).

rates, and market prices." Id. at 1387. Because the plaintiffs "could not establish these elements as a matter of fact, and thus the jury was free to use its best judgment in ascertaining and assessing the damages," the court reasoned that this evidence failed the calculable prong of the prejudgment interest standard. Id.

This court has previously had one occasion to address in depth the matter of prejudgment interest under Utah law. In Pro Axess, Inc. v. Orlux Distribution, Inc., 428 F.3d 1270 (10th Cir. 2005), we determined that Pro Axess was not entitled to prejudgment interest on the lost profits caused by breach of contract. Id. at 1285. We concluded that Pro Axess's claim did not meet either of the requirements for prejudgment interest. Id. at 1282-85. With respect to the calculability of damages, we noted that Pro Axess provided varying lost profits calculations before and during trial and that it "submitted virtually no evidence in support of its claim of a 35% gross profit margin." Id. at 1283. Given "Utah courts' reluctance to award prejudgment interest for unrealized profits," we held that "Pro Axess's evidence of its gross profit margin is clearly inadequate to support the award of prejudgment interest." Id. at 1283 (citing Canyon Country Store, 781 P.2d at 422).

From these cases, we conclude that the propriety of prejudgment interest is not controlled by the cause of action or the legal theory under which a plaintiff prevails. In particular, prejudgment interest for property damage may be perfectly appropriate in some cases but not in others. The critical consideration

under the <u>Fell</u> test is the manner in which damages are proven.

**B**

With this background in mind, we turn to the circumstances of the case before us. The district court determined that AE's damages failed both prongs of <u>Fell</u>. Rejecting AE's contention that its damages were complete when the Entran II was installed in 1992, the district court explained:

> Had the jury actually calculated the cost of replacing the system in 1992, this argument—unlike the Entran II hose—might hold water. However, damages were not based upon the cost of the system in 1992, or the actual cost of replacing the Entran II at any prior fixed moment in time, but instead were based on the estimated replacement costs as of [trial]. AE's suggestion that I award prejudgment interest as of 1992 based on the 2007 cost to repair a system that functioned properly for over a dozen years stretches the bounds of logic and is contrary to Utah law. <u>See, e.g.</u>, <u>Saleh v. Farmers Ins. Exch.</u>, 133 P.3d 428, 436 (Utah 2006) (holding that when damages are not ascertained until trial, prejudgment interest is inappropriate).

With respect to <u>Fell</u>'s calculability prong, the district court relied heavily on its understanding of <u>Pro Axess</u>. "When a prevailing party is unable to calculate his damages consistently during the period before trial," the court held, "a presumption arises that such damages are not calculable within a mathematical certainty." It then suggested that although "this presumption can be overcome when a jury adopts the expert testimony as fact," AE had not rebutted the presumption because the jury's verdict did not match any of AE's estimates.

As noted above, although the decision to award prejudgment interest is generally reviewed for abuse of discretion, we review the legal analysis employed

by the district court de novo. <u>Loughridge</u>, 431 F.3d at 1288. With the added guidance of the intervening decision from the Utah Supreme Court in <u>Encon Utah</u>, we perceive legal errors in the district court's analysis under both <u>Fell</u> prongs. First, the district court interpreted Utah law to prohibit prejudgment interest "when damages are not ascertained until trial." Second, it incorrectly applied a presumption against prejudgment interest because of the evolving repair estimates provided by AE's expert. Nevertheless, we conclude that neither error leads to a reversal.

**1**

The district court erred in its explanation of the first <u>Fell</u> prong, which requires that damages be "complete." <u>See</u> <u>Smith</u>, 82 P.3d at 1068. Citing <u>Saleh</u>, 133 P.3d at 436, the district court stated that "when damages are not ascertained until trial, prejudgment interest is inappropriate." This is a misreading of <u>Saleh</u>. In that case, the Utah Supreme Court simply endorsed the trial court's reasoning that because damages "were not <u>ascertainable</u>" until "additional evidence was presented at trial," prejudgment interest was inappropriate. <u>Id.</u> (emphasis added). There exists an important distinction between damages that are not <u>ascertained</u> until trial and damages that are not <u>ascertainable</u> until trial. In <u>Saleh</u>, the latter was true. Accordingly, the damages were "incomplete" and thus "peculiarly within the province of the jury to assess at the time of the trial." <u>Fell</u>, 88 P. at 1006.

- 13 -

Conversely, Encon Utah is clear that prejudgment interest may be appropriate even if the amount of damages are ascertained at trial. 210 P.3d at 273-74. Requiring that damages be "complete" prior to judgment simply guarantees that "the loss has been fixed as of a definite time." Id. at 272 (quotation and alteration omitted). It enables prejudgment interest to serve its "purpose of . . . compensat[ing] a party for the depreciating value of the amount owed over time and, as a corollary, . . . deter[ring] parties from intentionally withholding an amount that is liquidated and owing." Id. at 275 (quotation omitted). As the Utah Supreme Court explained in Kimball:

> At the time the claim was presented the injury and damages were complete, and respondents were limited in their proof in respect to the amount of damages as of the time when the improvements were completed. If, therefore, respondents were entitled to compensation at all, they were entitled to it from the time of the completion of the work at which time the entire injury to the property was complete.

90 P. at 397.

When a party proves that its damages were fixed at a particular point in time—even when it does not establish that proof until trial—that party is entitled to the benefit of its money from that time. Prejudgment interest remedies this injury.

**2**

Equally flawed was the district court's calculability analysis. As the Utah Supreme Court noted in Encon Utah, courts have employed a plethora of terms to

describe the calculability prong: "measurable by facts and figures," <u>Saleh</u>, 133 P.3d at 436; "calculated with mathematical accuracy in accordance with well-established rules of damages," <u>Bellon v. Malnar</u>, 808 P.2d 1089, 1097 (Utah 1991); and "calculable within a mathematical certainty," <u>Pro Axess</u>, 428 F.3d at 1283; <u>Lefavi v. Bertoch</u>, 994 P.2d 817, 823 (Utah Ct. App. 2000). However, the <u>Encon Utah</u> court clarified that

> [e]ach of these iterations of the standard for recovering prejudgment interest is correct. <u>None suggests or requires . . . that at the time the damages accrued, all of the damage figures must be known and remain static throughout the litigation. Rather, the standard focuses on the measurability and calculability of the damages</u>.

210 P.3d at 272 (emphasis added). In particular, "[w]here damages figures are subject to calculation . . ., even if the method of calculating is uncertain, or the damage figures change, prejudgment interest is appropriate." <u>Id.</u> at 273.

Like Goodyear does in this case, the defendants in <u>Encon Utah</u> argued that <u>Pro Axess</u> only permits prejudgment interest when the plaintiff has consistently estimated its damages in the period leading up to trial. <u>Encon Utah</u>, 210 P.3d at 273-74. The <u>Encon Utah</u> court roundly rejected this argument. It took pains to distinguish this argument from the "mathematical certainty" test, noting that in cases applying the latter test, "damages could not be calculated with <u>any</u> degree of certainty, in part, because of the inherently speculative nature of some of the damages sought." <u>Id.</u> at 273.

We read <u>Encon Utah</u> as squarely foreclosing the presumption employed by

- 15 -

the district court below. A party claiming prejudgment interest must provide the jury with evidence enabling it to sufficiently measure and calculate damages. See id. Simply because such evidence does not lead to a single damages figure from the start of the dispute is not per se a disqualification. Moreover, a plaintiff need not persuade the fact-finder to find damages in the exact amount ultimately claimed at trial, as suggested by the district court. Thus, the mere fact that AE could not establish a consistent estimate of the cost of repair prior to trial is not dispositive.

**3**

Having corrected the legal errors made by the district court, we nonetheless conclude that the nature of AE's proffered evidence did not allow the jury to calculate damages in a manner permitting an award of prejudgment interest under Utah law.[5] AE argues that the jury's damages assessment was based on facts and figures provided by the parties' expert witnesses, and thus the jury's calculation of damages permits the grant of prejudgment interest. Goodyear responds that the damages were never calculable with mathematical certainty given the variety of the estimates provided, the amount of padding built into those estimates, and the fact that the jury did not adopt a specific estimate as its judgment on damages.

---

[5] Because we conclude that AE's argument for prejudgment interest fails the calculability prong, we need not consider whether the claimed damages were complete as of a fixed date.

Goodyear has the better argument.

A shifting estimate over the course of litigation is of little relevance to the calculability inquiry. But, the nature of the evidence presented in support of a damages claim is. Cornia is particularly relevant to our analysis. In that case, plaintiffs entered into an agistment agreement, entrusting Wilcox with the care of 478 cows, all but 40 of which were pregnant. 898 P.2d at 1382. Wilcox returned 107 fewer cows and 177 fewer calves than plaintiffs expected. Id. The jury returned a specific verdict, awarding damages for 90 cows and 113 calves. Id. After the trial court denied plaintiffs' request for prejudgment interest, the Utah Supreme Court affirmed:

> [T]he jury heard conflicting testimony from experts regarding the cattle's expected pregnancy rates, weight range, loss rates, and market prices. In addition, the jury heard divergent evidence regarding the calves' expected gender, weight range, mortality rates, and market prices. Plaintiffs could not establish these elements as a matter of fact, and thus the jury was free to use its best judgment in ascertaining and assessing the damages.

Id. at 1387.

Importantly, Cornia does not stand for the proposition that "a prevailing party c[an] only recover [prejudgment interest] if a prevailing party never changed its claimed damages, no aspect of the damages calculation was disputed at trial, and the court awarded the entire claim without reduction or adjustment," Encon Utah, 210 P.3d at 275. Rather, the question is whether, faced with such evidence, the "trial court determined which costs to include and which to exclude,

- 17 -

[which] d[oes] not render the resulting damage award less measurable by facts and figures," id. (quotation omitted), or if it "free[ly] . . . use[d] its best judgment in ascertaining and assessing the damages," which does, Cornia, 898 P.2d at 1387.

We conclude that the nature of the damages in the case at hand are most similar to those in Cornia. Given that much of the evidence presented below concerned contractors' estimates, which by their very nature consist of facts and figures, it is possible that the jury "calculated" its award using those figures. But such was also the case in Cornia. 898 P.2d at 1386-87. More critically, the evidence did not allow the jury to simply select "which costs to include and which to exclude." Encon Utah, 210 P.3d at 275. Instead, nearly every aspect of the competing estimates required the jury to exercise vast discretion in assessing the necessity, scope, accuracy, and precision of the estimated costs. Such judgments are "peculiarly within the province of the jury to assess at the time of the trial." Fell, 88 P. at 1006.

As in Cornia, "the jury heard conflicting testimony from experts regarding" the most significant aspects of their estimates. See Cornia, 898 P.2d at 1387. Love and Farnsworth disagreed on the amount of time the repair would require, and the number and type of workers necessary. Thus, the jury's award necessarily includes an exercise of discretion as to the appropriate amount of wages. Similarly, Love testified that certain walls, cabinetry, and stone would need to be replaced, whereas Farnsworth told the jury that the Entran II could be

replaced without requiring significant costs for any of these items. An even greater discrepancy separated the overhead and profit figures provided by the competing experts. Just as in Cornia, the jury was required to exercise its best judgment to determine an appropriate award in light of divergent evidence.

Even if we were to consider only AE's evidence without the competing testimony, the jury was charged with exercising significant discretion. Love testified that a number of line items in his estimate were "guesses" with which employees in his own company disagreed. He included round figures for allowances that he acknowledged were based on the fact that the scope of the work was "insane" and thus he was not comfortable doing the work on a lump-sum basis. Similarly, he included a contingency of almost half a million dollars "for things that we don't know about, and that's what I think we're going to need." Although the facts and figures provided by Love may well have played a role in the jury's verdict, damages were simply "too speculative to allow for the addition of prejudgment interest." Canyon Country Store, 781 P.2d at 422.

We ultimately conclude that the nature of damages in this case is akin to Cornia and Canyon Country Store. Accordingly, prejudgment interest is inappropriate under the calculability prong of Utah's prejudgment interest standard.

## III

The district court's order denying prejudgment interest is **AFFIRMED**.