FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

WELLS FARGO BANK, N.A.,

      Plaintiff - Appellee/
      Cross-Appellant,

v.

STEWART TITLE GUARANTY
COMPANY,

      Defendant - Appellant/
      Cross-Appellee.

Nos. 21-4111, 21-4115

_____

**Appeals from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:19-CV-00285-TC)**
_____

Aaron R. Maurice, Maurice Wood, Las Vegas, Nevada (Justin R. Baer, Hirschi Baer & Clayton, PLLC, Salt Lake City, Utah, with him on the briefs), on behalf of the Defendant-Appellant/Cross-Appellee.

George W. Pratt (Angela Shewan with him on the briefs), Jones, Waldo, Holbrook & McDonough, P.C., Salt Lake City, Utah, on behalf of the Plaintiff-Appellee/Cross-Appellant.

_____

Before **HARTZ**, **BACHARACH**, and **MORITZ**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal sprung from Wells Fargo Bank's loan to Talisker Finance, Inc. Under the loan agreement, Talisker gave Wells Fargo a security interest in three parcels of land owned by Talisker's affiliates. To ensure that Talisker's affiliates had good title to the parcels, Wells Fargo bought title insurance from Stewart Title Guaranty Company.

Talisker defaulted, but it couldn't deliver good title to part of the land promised as collateral. The default triggered Wells Fargo's right to compensation under the title insurance policy. Under that policy, Stewart owed Wells Fargo for the diminution in the value of the collateral. But the amount of the diminution was complicated by the presence of multiple parcels.

Each parcel typically has its own distinct value. But a parcel could theoretically enhance the value of an adjacent parcel. *See* 1 Joyce Palomar, *Title Insurance Law* § 10:11, at 10-36 to 10-37 (2010) (explaining that the inability to assemble an insured parcel with other parcels might diminish the value of the land that is conveyed). For example, if two adjacent parcels are usable for retail stores, a retailer might be willing to pay a premium for the opportunity to build a store covering both parcels. So the loss of one parcel might diminish the value of an adjacent parcel.

Here the district court concluded that the lost parcel didn't affect the value of the other parcels. Because their values remained constant, the

district court properly found that the diminution was simply the value of the collateral that Talisker's affiliates didn't own.

1.    **The district court found that Wells Fargo had suffered a loss under the insurance policy.**

Wells Fargo's security interest covered three parcels of land, designated as Parcels A, B, and C. This coverage protected Wells Fargo from a defect in the title for any of the parcels. If a title defect existed, Wells Fargo would obtain the amount that the collateral had diminished in value.

Talisker not only defaulted but failed to deliver good title on roughly 127 acres within Parcel B. Given Talisker's inability to deliver good title on this part of the collateral, Wells Fargo made a claim on the title insurance policy. The parties couldn't agree on the amount that Stewart owed Wells Fargo, and this suit followed.

After hearing the evidence, the district court awarded Wells Fargo $3,210,200 as the value of the lost parcel. That award included the value of the land and the improvements on the land.

Stewart appeals, arguing that the loss of the collateral didn't diminish the value of the collateral as a whole.

**2.     Stewart disregards the context of the district court's discussion of the diminution in value.**

Stewart argues that the district court acknowledged that the title defect hadn't diminished the value of the collateral. For this argument, Stewart focuses on two statements by the district court:

1.     "[I]t does not matter that [Stewart's expert witness] calculated the [diminution in value] in relation to [the other part of Parcel B] when he should have used the entire collateral estate. Either way, there is no diminution in value." Appellant's App'x vol. 3, at 678.

2.     "The court concludes that there is no diminution in value to the collateral estate based on the loss of the Claim Property." *Id.* at 679.

Stewart's focus disregards the context of both excerpts. They discuss the effect of the lost parcel on the value of the rest of the collateral—not the separate value of the lost parcel.

The court explained that the policy had protected against a diminution in value of the collateral. The policy measured the diminution in value based on a standard formula:

Value of the insured estate – collateral that was received = Loss.

This formula started with "the value of the insured estate." *Id.* at 676; Appellant's App'x vol. 8, at 2074. Here the "insured estate" consisted of the combination of Parcels A, B, and C. So the starting point of the calculation was the combined value of these parcels.

The policy then required subtraction of the value of the collateral "subject to the [title] defect." Appellant's App'x vol. 3, at 676; Appellant's App'x vol. 8, at 2074. This amount equaled the value of the collateral that Wells Fargo had actually received (the value of Parcels A and C and the part of Parcel B that Talisker was able to deliver).

Wells Fargo was entitled to the difference between these amounts. In determining these amounts, the parties disagreed on three factors:

1.    the market value of each parcel based on its highest and best use,[1]

2.    the possibility that the lost parcel could have enhanced the value of the remaining parcels,[2] and

3.    the value of the structures (improvements) that are considered part of the land itself.[3]

The district court observed that the parties should have started with the combined values of Parcels A, B, and C. In light of this observation,

---

[1]    *See, e.g.*, J. Bushnell Nielsen, *Title and Escrow Claims Guide* § 3.2.3.8 (2021 ed.) ("Generally accepted appraisal standards require an appraiser to establish fair market value according to the property's highest and best use.").

[2]    *See, e.g.*, J. Bushnell Nielsen, *Title and Escrow Claims Guide* § 3.2.3.8 (2021 ed.) ("In some circumstances, land or interests in property have a greater value in the aggregate than separately.").

[3]    *See, e.g.*, J. Bushnell Nielsen, *Title and Escrow Claims Guide* § 3.2.3.8 (2021 ed.) ("The correct method for title insurance claim purposes is to instruct the appraiser to value the property with the improvements that were in place when the title defect was discovered.").

the district court considered whether the lost parcel had enhanced the value of the other parcels.

Talisker's affiliates did have good title to Parcels A and C, but these parcels weren't adjacent to Parcel B[4]:



So the district court found that the lost part of Parcel B wouldn't have affected the value of Parcel A or C.

But a disagreement remained over Parcel B. That parcel contained two segments: (1) a segment called "Bonanza Flats" and (2) a segment that Talisker's affiliates didn't own. Stewart argued that the second segment

---

[4]    This is a simplified illustration of the parcels' locations based on the district court's description. Appellant's App'x vol. 3, at 673. This illustration is intended only to aid in understanding the district court's findings. The image was obtained from Google Maps. *See Paels v. Thomas*, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013) (taking judicial notice of a satellite image from Google Maps to depict a particular location).

hadn't affected the value of Bonanza Flats, and the district court agreed.

So the court calculated the diminution in value as the value of the lost

parcel. *See, e.g.*, Barlow Burke, *Law of Title Insurance* § 7.02[B], at 7-28

(3d ed. supp. 2022-2) ("[W]hen a distinct portion of the insured title's

property is lost because of an insured defect [it is] proper to measure the

damages by the value of that portion.");[5] *see also* Steven Plitt, et al.,

*Couch on Insurance* § 185:82, at 185-100 (3d rev. ed. 2018) ("The measure

of an insured owner's partial loss in title resulting from an outstanding

interest . . . has been held in some cases to be the value of the outstanding

interest or the land lost.").

The court explained that it had focused on the lost parcel because it

wouldn't have affected the value of the rest of the collateral. From that

explanation, Stewart plucks two sentences rejecting a "diminution in

value," arguing that

- the district court had found no diminution in value to the
  collateral as a whole and

- the lack of any diminution in value would prevent any
  recovery.

But Stewart has ignored the context of the two sentences. The court was

discussing Stewart's argument that the title defect for the lost parcel

---

[5]    Professor Burke also explains that for a partial failure of title, courts
can measure the diminution in the value of subdivided property "on a
parcel-by-parcel basis." Barlow Burke, *Law of Title Insurance* § 7.02[A],
at 7-26 (3d ed. supp. 2022-2).

hadn't affected the value of the rest of Parcel B (Bonanza Flats). Appellant's App'x vol. 7, at 1905 (statement by Stewart's expert witness that "in a diminution of value calculation, the primary valuation problem to be solved is determining the impact of the subject property on the remainder of the insured property Bananza [sic] Flats"); Appellant's App'x vol. 6, at 1669–70 (statement by Stewart's expert witness that his "assignment was to do a diminution in value of the Bonanza Flats, recognizing the [property that was promised even though Talisker's affiliates lacked good title] as excess vacant land").

In addressing Stewart's argument, the district court observed that the lost parcel had some value even if it wouldn't have enhanced the value of the rest of the collateral: "Of course, [the property that was promised even though Talisker's affiliates lacked good title] still has value based on its own highest and best use." Appellant's App'x vol. 3, at 678. Given this observation, the court

- found a diminution in value under the policy and

- based that diminution in value on the value of the lost parcel alone.

Stewart's contrary interpretation disregards the context of the district court's discussion.

### 3.    The district court didn't clearly err in finding an intent to include the four improvements.

The lost parcel consisted of not only the land but also four improvements: two high-speed chairlifts, a telecommunication facility, and a ski patrol building. The district court included the value of these improvements when determining the value of the lost parcel.

Stewart urges us to disregard the improvements because Wells Fargo hadn't intended to include them in the collateral.[6] For this argument, Stewart points out that Wells Fargo had earlier appraised the parcels without the improvements.[7]

Despite the nature of Wells Fargo's earlier appraisal, the insurance policy unambiguously included the improvements in Parcel B. That policy

---

[6]    In its reply brief, Stewart argues that the district court erred in calculating the award based on the value of the collateral that Wells Fargo was supposed to get and didn't. Stewart insists that it—not Wells Fargo—had correctly calculated the award based on the diminution in value. But the district court used Stewart's valuation of the land.

Granted, the court added the value of the improvements. But Stewart doesn't question the need to include improvements in a typical calculation of a diminution in value. To the contrary, Stewart argues only that the contracting parties hadn't intended to include the improvements as collateral.

[7]    Wells Fargo argues that the district court shouldn't have allowed the introduction of evidence questioning an intent to include the value of the improvements in the collateral. But Wells Fargo is defending the judgment, and reversal of the evidentiary ruling wouldn't appear to help Wells Fargo. So we need not consider Wells Fargo's argument on admissibility of the evidence.

9

defined "land" to include "improvements affixed thereto." Appellant's App'x vol. 8, at 2073. Under Utah law, "'improvements' are defined as real estate and includes all buildings, structures, fixtures, fences and improvements erected upon or affixed to land." *Great Salt Lake Mins. & Chemicals Corp. v. State Tax Comm'n*, 573 P.2d 337, 339 (Utah 1977). Under this definition, the covered improvements include the high-speed chairlifts, the telecommunication facility, and the ski patrol building. So the district court included these improvements when valuing the lost parcel.

Stewart challenges the district court's implicit finding that the parties to the loan had intended to include the improvements in the collateral. Because this challenge is factual, we consider only whether the district court clearly erred in its finding. Fed. R. Civ. P. 52(a)(6). We regard the finding as clearly erroneous only if (1) it lacked any factual support or (2) we're definitely and firmly convinced that the district court made a mistake. *Mathis v. Huff & Puff Trucking Co.*, 787 F.3d 1297, 1305 (10th Cir. 2015).

In determining whether the district court clearly erred, we focus on the parties' intent in entering the loan. *See Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991) (stating that the court must determine the

parties' intent from the contractual terms alone when they're unambiguous). That intent is unambiguously reflected in the policy,[8] which

- included all of the land within Parcel B,[9] Appellant's App'x vol. 8, at 2076–2116, and

- defined "land" to encompass improvements "which by law constitute real property," *id.* at 2073.

And Utah law defines real property "improvements" as structures fixed to the land. *See Great Salt Lake Mins. & Chemicals Corp. v. State Tax Comm'n*, 573 P.2d 337, 339 (Utah 1977) (defining "improvements"). So the parties must have intended for the loan to include the improvements within the lost parcel.

Stewart argues that Wells Fargo didn't intend to include the improvements, pointing to Wells Fargo's prior valuations of the collateral.

---

[8] Under Utah law, a contract "is ambiguous if it is capable of more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991) (quoting *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983)); *see also Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 605 (Utah 2002) ("In evaluating whether the plain language is ambiguous, we attempt to harmonize all of the contract's provisions and all of its terms."). Here the policy unambiguously covered Parcel B and defined "land" to include improvements.

[9] Stewart points out that its expert witness opined that the loss of the improvements had resulted in "no 'actual monetary loss or damage' to Wells Fargo" because the improvements hadn't enhanced the value of Bonanza Flats. Appellant's Reply Br. at 28 (quoting Appellant's App'x vol. 6, at 1585–86). But the district court could reasonably find that the improvements were valuable in themselves.

For example, Wells Fargo didn't include the value of the improvements in the original proof of loss, the amended proof of loss, or the initial appraisal of the collateral.

But Wells Fargo submitted the original and amended proofs of loss years after the parties had entered into the loan. So the district court could reasonably discount the effect of the proofs of loss on Wells Fargo's intent roughly a decade earlier.

The district court could also reasonably infer that Wells Fargo had intended to obtain a security interest in all of Parcel B. Rather than speculate that Talisker and Wells Fargo might have mistakenly included the improvements as collateral, the district court reasonably relied on the unambiguous language in the loan agreement.

Stewart relies not only on the proofs of loss but also on Wells Fargo's initial appraisal. There an appraiser measured the value based on a leased fee and omitted the improvements. From this omission, Stewart infers that Wells Fargo hadn't intended to include the improvements.

This inference is reasonable, but not dispositive. At trial, Wells Fargo's appraiser used a fee simple valuation, which incorporated the value of the improvements. And Stewart doesn't question (1) Wells Fargo's intent to obtain a security interest in the fee simple title of the real property or (2) Utah's classification of the improvements as part of the real

property. So Wells Fargo's earlier appraisal didn't foreclose an intent to include the improvements.

Given this evidence, the district court didn't clearly err by including the value of the improvements.

**4.    The district court didn't err in quantifying the diminution in value.**

The district court awarded Wells Fargo $3,210,200. In its reply brief, Stewart observed that no witness had ever used this figure as the total value.

This observation proves little. The court calculated the award by adding the values of the land and the improvements. Stewart's expert witness had valued the land at $330,200, and the district court accepted this valuation.

The court then added the value of the improvements. For the telecommunications facility and the two high-speed chairlifts, the court credited the appraisal by Wells Fargo's expert witness: $2,860,000. And the parties agreed on the value of the ski patrol building: $20,000. So the court added these amounts to the value of the land, arriving at a total of $3,210,200.

Though Stewart points out that no one had mentioned this amount, the district court calculated the award based on the expert testimony and

13

agreed valuation of the ski patrol building. And Stewart doesn't identify any errors in this calculation.[10]

## 5.    The district court should have awarded prejudgment interest.

Though the district court didn't err in valuing the lost parcel, Wells Fargo argues that it should have obtained an award of prejudgment interest. In addressing this argument, we consider the availability of prejudgment interest under state law. *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009). The parties agree that the pertinent state law is Utah's, so we conduct de novo review over the district court's application of Utah law. *Id.*

Under Utah law, prejudgment interest is available if damages "are complete" and are measurable by "fixed rules of evidence and known standards of value." *Smith v. Fairfax Realty, Inc.*, 82 P.3d 1064, 1068 (Utah 2003) (quoting *Fell v. Union Pac. Ry. Co.*, 88 P. 1003, 1007 (Utah 1907)). Applying this test, Utah courts have focused on the ability to fix the loss at a definite time and to calculate the amount "with mathematical accuracy in accordance with well-established rules of damages." *AE*, 576

---

[10]    Under Utah law, Wells Fargo bears the burden to establish coverage. *See Utah Farm Bureau Ins. Co. v. Dairyland Ins. Co.*, 634 F.2d 1326, 1328 (10th Cir. 1980). Stewart argues that Wells Fargo presented no pertinent evidence because its expert witness had not appraised the diminution in value to the entire collateral package. But the court could calculate the award based on appraisals of the lost parcel and its improvements.

F.3d at 1055 (quoting *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 272 (Utah 2009) (cleaned up)).

The district court didn't consider whether the damages were fixed. So we have no ruling on this element. But the appraisers for both parties valued the amount of Wells Fargo's loss as of November 17, 2015 (when Wells Fargo tried to foreclose on the lost parcel). Given the appraisers' shared approach, the factfinder needed to fix the loss on November 17, 2015.

The remaining question is whether the damages could be calculated with mathematical accuracy based on well-established rules of damages. The district court concluded that too many uncertainties existed for this calculation. We disagree. The calculation was possible from the appraisals of the lost parcel and the improvements.

The Utah Supreme Court considered a similar issue in *Smith v. Fairfax Realty, Inc.*, 82 P.3d 1064 (Utah 2003). There the plaintiffs' injury consisted of the loss of partnership assets. *Id.* at 1067. The court held that prejudgment interest was available because the factfinder had relied on an appraiser's use of generally accepted principles of valuation. *Id.* at 1070. The court acknowledged disagreement between the parties, but concluded that the factfinder had used "known standards of value." *Id.* (quoting *Fell v. Union Pac. Ry. Co.*, 88 P. 1003, 1007 (Utah 1907)).

15

Here too the factfinder relied on the appraisers' use of accepted principles. For the land itself, the district court relied on Stewart's appraiser, who had relied on the comparable sales approach. For the high-speed chairlifts, the district court relied on Wells Fargo's appraiser, who had relied on the cost approach. For the telecommunication facility, the court relied on the same appraiser, who had relied on the cost approach and income capitalization approach. For the ski patrol building, the court relied on both parties' appraisers, who had agreed on the value based on the cost approach. All of these approaches are generally accepted methods of appraising property. *See* Appraisal Institute, *The Appraisal of Real Estate* 36 (14th ed. 2013) (stating that three approaches for appraising a property's value are the "cost approach," the "sales comparison approach," and the "income capitalization approach").

Despite the apparent applicability of *Smith*, the district court reasoned that too many uncertainties remained for an award of prejudgment interest. For this reasoning, the court relied on *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050 (10th Cir. 2009). There this Court was addressing repair costs, not property value. The costs stemmed from a need to replace part or all of a heating and snowmelt system for a 13,000-square foot house. *Id.* at 1053. Not only did the parties disagree on the repair costs, but the plaintiff itself had presented roughly ten different cost estimates, ranging from roughly $3.8 million to $5.5 million. *Id.* at 1054.

16

The plaintiff's expert witness explained that no one could predict the extent of the repairs. For example, this expert witness insisted on the need to damage some walls but acknowledged uncertainty on the extent of the damage. *Id.*

The plaintiff's expert witness not only acknowledged this uncertainty on the extent of the damage, but also disagreed with the defense over the needed repairs. *Id.* at 1054–55. For example, the defense's expert witness proposed an approach that would eliminate the use of a hose underneath the cabinetry, eliminating the need for cabinetry work. *Id.* The plaintiff's expert witness had estimated $300,000 for the cabinetry work. *Id.* at 1054.

Applying Utah law, we recognized the jury's inability to calculate damages based on known standards. We explained that "nearly every aspect of the competing estimates required the jury to exercise vast discretion in assessing the necessity, scope, accuracy, and precision of the estimated costs." *Id.* at 1060.

No such discretionary decisions were needed here. The land and the improvements had defined market values. (For one of the improvements, the ski patrol building, the parties even agreed on the value.) In *AE*, the factfinder had to exercise considerable discretion to determine the extent of the needed repairs. And even then, the plaintiff itself had relied on roughly ten different estimates that were millions of dollars apart. *See* p. 16, above. Those concerns are not present here.

The district court used a measure of damages subject to calculation, so *Smith* required an award of prejudgment interest. The court thus erred in denying this award.

## V.    Conclusion

We affirm on liability. The district court found a diminution in value to the collateral and didn't err in calculating that value.

But we reverse the denial of prejudgment interest. Despite the disagreement on the diminution in value, the court could calculate the amount based on the appraisers' use of accepted methods. So on remand, the district court should determine the amount that Wells Fargo is owed in prejudgment interest.